IRVING L. HEATH, Respondent, *v.* STATE OF NEW YORK, Appellant.

Third Department, March 7, 1951.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General* and *Henry S. Manley,* of counsel), for appellant.

*William E. Night* for respondent.

BERGAN, J. An employer whose workmen's compensation coverage was furnished by the State Insurance Fund has had a judgment in the Court of Claims against the State of New York for the value of legal services incurred before the Workmen's Compensation Board upon the theory that the State is liable for the contractual obligations of the fund.

In the proceedings before the board the State Insurance Fund had disclaimed coverage of its insured for an industrial accident on the ground the kind of work in which the accident occurred was not within the policy. The insured employer then retained counsel who represented him before the board. The employer asked that the policy be reformed to express the true intention of insurer and insured that the kind of work from which the accident arose be included in the coverage.

This issue was tried before the referee and resulted in a decision of the board that the policy be reformed to include coverage for the accident. Reformation of a workmen's compensation insurance policy is within the jurisdiction of the Workmen's Compensation Board. (*Royal Ind. Co.* v. *Heller*, 256 N. Y. 322.)

An appeal was taken by the State Insurance Fund to this court where the decision of the board was affirmed. (*Matter of Fortner* v. *Heath*, 274 App. Div. 958, motion for leave to appeal denied, 274 App. Div. 1076 and 298 N. Y. 933.) The determination that the policy be reformed to include the industrial operation in which the compensation claim arose thus was decided with a judicial finality.

By the policy of insurance the insurer, among other things, undertook " to defend " any proceeding which might be instituted " against " the insured " on account of such injuries ". At the time the carrier disclaimed coverage it was not required by the terms of the policy to have defended the insured employer against the claim because " such injuries ", of course, were only those expressly covered.

But reformation expresses an intent that should have been but was not made explicit. It is retrospective. It necessarily goes back to the writing of the instrument and it therefore affects the course of any rights and obligations after the origination of the instrument. An excellent example of this scope in reformation is *Baird* v. *Erie R. R. Co.* (148 App. Div. 452, 462) where it was decided that the passage of a statute between the making of a contract and a decree of reformation, which would have prohibited a contract in the respects in which the court directed reformation, was no bar to the relief. The controlling time was that of the execution of the contract.

When the State Insurance Fund disclaimed coverage in literal reliance on the terms of its policy, it took the chance that a court might say its view of noncoverage was wrong. It also took the chance that it might be held that the instrument did not say what the parties, including itself, intended. This is the kind of risk that everyone takes in a society where judicial interpretation may be added to personal judgments of rights. It is the risk, for instance, that when a man interprets the lines of his property or the language of his deed or the scope of his contract and acts upon his interpretation, it may later be said by a court, not only that he was wrong about what he thought was right, but that he must pay the price of being wrong.

Thus, there could be little doubt that after the policy had been reformed to include the industrial operation in which the accident occurred, the carrier would have been deemed to have breached its contract to defend the compensation claim and to have been answerable to its insured for damages sustained when he undertook his own defense of the claim against him.

As we read the opinion and findings before us, it was partly on this theory that the Court of Claims based its judgment. The opinion stated that there was before the referee a claim for compensation and the policy expressly " obligated the carrier to defend the claim ". The court seemed to be of opinion that the question of coverage was an incident to this. There were, additionally, findings made that the insured was obliged to retain counsel for defense of the claim in compensation "against " him and that in this proceeding there were issues for disposition besides that of coverage in all of which issues counsel were retained by the insured to represent him.

If, as a result of the carrier's breach of agreement to defend in the compensation proceeding, the insured had retained counsel to do what the carrier neglected to do and as an incident to this litigated the question of insurance coverage, we would have no trouble in affirming this judgment.

But the record as it reaches us does not admit that a finding of damage rest in any part on the legal services rendered in defense of the workmen's compensation claim against the insured. The parties had, by stipulation, distinctly withdrawn that question from the consideration of the Court of Claims.

In the course of the trial it was stipulated that none of the legal services rendered to the insured, upon which his damage here is entirely predicated, were rendered in the defense of the workmen's compensation claim against him " but were rendered solely on the question of coverage ". The respondent's brief here restates this stipulation: " The actual services rendered, however, were directed to the question of coverage ".

Therefore, it was irrelevant to damage based on legal services to find, as the court did, that the insured was obliged to hire counsel to defend the workmen's compensation claim, or that there were other issues than coverage litigated. That part of the cost of litigation was distinctly taken out of the case.

What is left to decide, and it is very squarely presented in view of the stipulation, is whether the necessity to retain and pay counsel in the reformation of the insurance contract itself

was a breach of that contract. Under the contract the carrier agreed to " defend " the insured. It would so defend him in proceedings " against him " on account of such injuries.

The legal services incurred which are the only ground for damage, were not incurred, so the parties agreed, in defense of any claim against the insured. They were incurred in the insured's claim against the carrier based upon the contention that the way the contract was written and accepted was not the way it was intended. The policy cannot fairly be read to have stated any agreement by the carrier to undertake to establish this contention as part of its legal service to the insured, where the process can be distinctly segregated, as it can be here, from the general duty to defend against workmen's compensation claims.

The judgment should be reversed on the law and the facts and the claim dismissed, without costs.

FOSTER, P. J., HEFFERNAN, BREWSTER, and COON, JJ., concur.

The court reverses findings of fact numbered 5, 12 and 13, and disaffirms conclusions of law numbered 4, 5, 7 and 8. New findings of fact are made as follows: (1) That the State Insurance Fund did not defend the claimant in the workmen's compensation claim prior to the reformation of the policy; (2) that the legal services incurred by claimant were rendered in the proceeding arising from the workmen's compensation claim against claimant, but were solely for the prosecution of claimant's demand for reformation of the policy of insurance, and were not rendered in the defense of the compensation proceeding against claimant.

Judgment reversed on the law and the facts and the claim dismissed, without costs.