19 N.Y.2d 519 (1967)
Sam Sukup, Respondent,
v.
State of New York, Appellant. (Claim No. 37497.)
Court of Appeals of the State of New York.
Argued April 4, 1967.
Decided May 16, 1967.
Louis J. Lefkowitz, Attorney-General (Emil Woldar and Ruth Kessler Toch of counsel), for appellant.
Harry E. Ratner for respondent.
Chief Judge FULD and Judges VAN VOORHIS and SCILEPPI concur with Judge BERGAN; Judge BURKE dissents and votes to affirm in an opinion in which Judges KEATING and BREITEL concur.
*520 BERGAN, J.
A liability has been imposed on an insurance carrier for the legal expenses incurred by the insured in litigating with the carrier the question of coverage under a workmen's compensation policy. Liability has been grounded on a finding by the Court of Claims, affirmed at the Appellate Division, that the carrier's disavowal of responsibility under its policy was not made in good faith.
The claimant Sukup is the insured; the carrier is the State Insurance Fund for whose liabilities the State is responsible; and, accordingly, the claim against it is prosecuted in the Court of Claims.
The Court of Claims found that in denying coverage the State Fund "failed to deal fairly and in good faith with claimant" and that "its denial of coverage" was "in effect" a breach of contract. The Appellate Division also found that the carrier had breached "the underlying obligation of good faith".
There is, however, no allegation in the claim filed by claimant  the pleading in the case  that the State Fund's assertion before the Workmen's Compensation Board that it did not cover *521 the accident in issue was asserted in bad faith. The claim alleges a "breach of contract" by the State Fund in denying coverage under the policy and certain damages which accrued to claimant from this. There was no amendment to the claim to assert bad faith suggested during the trial in the Court of Claims.
Nor is there any evidence in the record on which a finding of bad faith on the part of the State Fund could reasonably be predicated. It is not a breach of contract per se for a carrier to deny that its policy covers a particular event and the assertion of such noncoverage raises a question which, in the course of workmen's compensation adjudication, is to be resolved by the Workmen's Compensation Board.
Here it was resolved against the carrier and in favor of the claimant, the insured, but essentially all this amounts to is an adverse legal controversy between the carrier and insured for which no liability for the legal fees of one party would be chargeable to the other in the absence of some extraordinary showing.
The carrier did not advise the insured that it would not defend him before the Workmen's Compensation Board. Its policy required it to defend all claims against its insured even though the claims were "wholly groundless, false or fraudulent". It advised the attorney for the insured by letter that the claim was to be heard on a stated future date, and, in view of the contention of the carrier that the accident was not covered, asked that he "kindly arrange to be present at the hearing" and, also, that he notify the insured and "arrange to have him present".
It is clear from this and from the testimony of the insured's lawyer at the trial of this present case that the issue which brought the insured and his lawyer to the workmen's compensation hearings was the issue between the carrier and the insured as to coverage.
The lawyer testified "there is no question that the State Insurance Fund controverted the question of coverage from the beginning to the end". After the Compensation Referee found against the carrier on coverage, it appealed to the board and the insured's lawyer appeared before the board to defend the Referee's ruling. It is clear that all of the legal services were rendered in the controversy between the carrier and its insured.
*522 It is settled that the carrier may, and indeed under its contract should, defend the insured from the claim for compensation even though it also asserts that there is no coverage (Matter of Jaabeck v. Crane's Sons Co., 238 N.Y. 314; Matter of Cheesman, 236 N.Y. 47, 51).
It is equally well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk (Doyle v. Allstate Ins. Co., 1 N Y 2d 439, 444; Manko v. City of Buffalo, 296 N.Y. 905, affg. 271 App. Div. 286; Heath v. State of New York, 303 N.Y. 658, affg. 278 App. Div. 8; Davis Acoustical Corp. v. Hanover Ins. Co., 22 A D 2d 843; Great Amer. Ind. Co. v. Audlane Realty Corp., 163 Misc. 301).
It would require more than an arguable difference of opinion between carrier and insured over coverage to impose an extra-contractual liability for legal expenses in a controversy of this kind. It would require a showing of such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.
The record in this case shows that the carrier was wrong and the insured right as to coverage, as the Workmen's Compensation Board found. The record does not show any gross disregard for its policy obligation by the insurer in asserting noncoverage. The record shows merely an arguable case in which the carrier was held wrong. That is not enough to impose a liability beyond the terms of the contract.
The arguable case is this: In the insured's declaration forming part of the policy as to the "Location of All Business Operations, by Town or City, with Street and Number", the claimant answered "11 Pike Street, NY City & elsewhere in NYS". There is proof that the business of insured in New York was "real estate" at 11 Pike Street where he owned a building, containing stores and apartments. He also had a farm in Rock Rift, Delaware County. The workmen's compensation claim arose from the death of insured's employee on the farm on January 25, 1958.
The workmen's compensation record which was offered in evidence on the trial of this present case makes it clear that, after the accident and before any claim of compensation was made, the insured, in March, 1958, made an application to the *523 carrier for an indorsement on the policy which would expressly include the coverage of the Delaware County location.
No reference to the fact an accident had already occurred there was made in this application for indorsement and the indorsement to include the Delaware County location was accordingly made by the carrier. Three months later, in June, 1958, the workmen's compensation claim was filed.
This request for an indorsement specifically to cover the Delaware County location after the accident and before the carrier was advised of its occurrence would signal a reasonably alert carrier to the probability that its insured did not himself regard the phrase "elsewhere in NYS." in the declaration to be sufficiently broad to include farming operations many miles from the stated place of business in New York City. The notice of controversy filed with the Workmen's Compensation Board raised not only the question of place of coverage, but also, on coverage, the employer-employee relationship.
Showing this, and nothing more, the claimant here has not established the bad faith of the carrier in controverting coverage. The decision in Brassil v. Maryland Cas. Co. (210 N.Y. 235), on which the Court of Claims relied, does not sustain the result reached here. There, the insurer refused to accept an offer of settlement within the range of the policy and on trial a verdict was returned against the insured for four times the amount of the policy.
The insurance company then offered to pay the face of its policy but refused to take an appeal. The insured prosecuted the appeal himself and the judgment was reversed and a new trial ordered. The insured was allowed reasonable expenses for prosecuting the appeal.
As Judge WERNER noted (p. 242), "it would be a reproach to the law if there were no remedy for so obvious a wrong as was inflicted on this plaintiff". There is no such injustice demonstrated here if this claimant pays his own expenses in accordance with the usual rule in a controversy with the carrier over coverage.
The order should be reversed and the claim dismissed, with costs.
*524 BURKE, J. (dissenting).
I dissent and vote to affirm.
Upon this record the insurance carrier ought to be held liable for the concededly reasonable expenses incurred by the insured for legal services rendered to the insured, not at his request, but rather at the request of his carrier. It is only proper that the courts indemnify this insured for the legal expense to which he has been unnecessarily put: one cannot say that a special indemnification agreement is necessary to entitle him to reimbursement for legal expenses under circumstances where there is clear proof of the absence of good faith on the part of the carrier and where the feigned issue posed by the carrier in respect to liability on the claim is identical to the issue framed as to coverage.
In this case one of the insured's employees was burned to death on a farm owned by the insured in Rock Rift, Delaware County, New York, and a compensation claim was duly filed. The carrier then filed a notice of controversy in which it contested the claim for compensation on the ground that its policy did not cover the activities of the deceased on the date of his death, and that, therefore, even if the death had occurred within the scope of employment, it was employment not covered by the compensation insurance.
The insured had requested coverage at 11 Pike Street, New York City, and at his farm at Rock Rift, Delaware County. The Workmen's Compensation and Employers Liability Policy issued to the insured described the geographical coverage of the policy as "11 Pike Street, New York City and elsewhere in NYS." (Italics supplied.) As to employment within New York State, broader and more encompassing language cannot be imagined. The policy also provided that the carrier would defend in the name and on behalf of the insured employer "although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent." In light of the clear language used, the intent of the insured and the insurer was evident and there was no ambiguity. Consequently the disclaimer as to coverage by the carrier constituted a manifest act of mala fides.
Indeed, its conduct amounted to a breach of the insurance contract since the uncontradicted facts left no room for dispute as to coverage. There was ample justification, therefore, for *525 the factual finding of bad faith made by the Court of Claims and affirmed by the Appellate Division. In the face of the patently unambiguous indorsement of coverage ("elsewhere in NYS"), the naked attempt by the carrier to expose the insured to a money judgment and possible criminal prosecution for failure to carry workmen's compensation insurance was an inexcusable violation of the carrier's obligation to comply with the clear terms of the contract as written. The carrier's emphasis in the notice of controversy and at the hearing was not directed to the defense against the claim of the representative of the deceased, but was rather intended to shift the responsibility for the payment of the claim for accidental death over to the insured.
This was not the proper forum for such a coverage dispute, since the board was primarily concerned with the issue of compensation, not liability therefor. It is incredible that, as claimed by the carrier, it could have defended the insured in good faith when at the same time it was disclaiming liability under its policy against the insured on the identical issue, at the very same proceeding. This issue as to scope of employment was so interwoven into both questions that we cannot conclude, as a matter of law, that the insured's attorney was present at the hearing solely for the purpose of defending the insured on the disclaimer of coverage. Since the issues were identical, since the carrier could not have been acting in good faith and, since the insured's lawyer was present at the behest not of his client but of the carrier, it is only right and just that the carrier should be liable, even in the absence of a special indemnification agreement, for the reasonable legal expenses unnecessarily expended by and unjustifiably forced upon the insured employer.
Order reversed, etc.