In the Matter of SAMUEL JACOBELLI, Individually and as Executor of VINCENT JACOBELLI, Deceased, Petitioner, v EDWARD REGAN, as Comptroller of the State of New York, Respondent.

Third Department, November 5, 1987

APPEARANCES OF COUNSEL

*Cuddy & Fedder (Thomas R. Beirne* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* of counsel), for respondent.

## OPINION OF THE COURT

HARVEY, J.

This dispute over the death benefits of Vincent Jacobelli (hereinafter decedent), a member of the New York State Employees' Retirement System (hereinafter retirement system), who died in September 1976, has been before this court on two previous occasions (114 AD2d 609; 88 AD2d 1040). Briefly stated, petitioner, who is decedent's brother, seeks to recover the death benefits on behalf of decedent's estate. Respondent has refused to pay the funds to the estate because decedent filed a "designation of beneficiary" form with respondent in 1949 in which he purported to nominate as his beneficiary a person described as "Juanita Jacobelli whose address is 35 Riverdale Avenue, Port Chester, N.Y. and whose relationship to me is wife". However, decedent's only marriage was to Rose Zacchenino in 1957, and she predeceased him. Further, no one with the name "Juanita" lived at 35 Riverdale Avenue in the Village of Port Chester in Westchester County.

Extensive research by both petitioner and respondent has revealed that decedent may have had a brief relationship with a woman named Juanita Newman Goldman sometime in the mid-1940s. In August 1947, Juanita Newman Goldman gave birth to a daughter, Sandra Goldman, in Scranton, Pennsylvania. Decedent was later adjudicated the father of Sandra Goldman and ordered to pay child support. However, neither party has been able to locate Juanita Newman Goldman or find any relevant information about her. Although Sandra Goldman was located, she had been abandoned at a very early age and had no recollection of her mother and was not even certain of her mother's name.

Curiously, three typewritten letters were received by respondent in 1983 from an individual purporting to be Juanita Jacobelli. This individual, however, failed to keep appointments for an interview with representatives of respondent and was never interviewed either in person or over the telephone. Another individual, "Jim Goldman", purportedly the son of

Juanita Jacobelli and half brother of Sandra Goldman, sent one typewritten letter to respondent on behalf of Juanita Jacobelli in which he indicated that his mother was a "bag lady" in Pennsylvania. The return address on all these letters was a post-office box number in Utica, New York. A subsequent investigation revealed that, although the box was rented to "Juanita Jacobelli" and "Jimmy Goldman", they had given a fictitious address as their place of residence. Nothing further has been received from either individual since December 1983.

Respondent retained Equilax Services to conduct an investigation in both New York and Pennsylvania for information about "Juanita Jacobelli"/"Juanita Newman Goldman" and "James"/"Jimmy Goldman". Information was sought from, among other places, hospitals, psychiatric centers, police and Sheriff's departments, religious organizations, and various agencies of local and State Government, as well as the Federal Government. The investigation concluded that "we have not been able to effectively find any tangible evidence that either of these two individuals, either currently or previously ever existed in the states of New York or Pennsylvania, with the exception of the conflicting school records from Scranton [Pennsylvania] public school and the registration of birth provided by the Commonwealth of Pennsylvania".

This court withheld decision when this proceeding was last before us (114 AD2d 609, *supra*) in order to allow respondent, pursuant to stipulation of the parties, to conduct a further investigation. The investigation is complete and we now turn to the merits of this proceeding.

It is settled law that retirement death benefits are to be paid to the person nominated by the member of the retirement system (*Matter of Prouse v Misarti,* 115 AD2d 867, 868; *Couture v Regan,* 110 AD2d 360). Respondent possesses "no power or discretion to pay the benefits to any person other than the member's duly designated beneficiary" (*Matter of Ginsberg v Levitt,* 36 AD2d 82, 84, *lv denied* 28 NY2d 486, *cert denied* 404 US 959; *see, Matter of Demerritt v Levitt,* 71 AD2d 757, *lv denied* 48 NY2d 607). In the event that no beneficiary is duly nominated, or if the beneficiary predeceases the member, then the death benefit must be paid to the member's estate (Retirement and Social Security Law § 51 [d]; § 60 [c]; *Matter of Jacobelli v Regan,* 88 AD2d 1040, 1041, *supra).*

The difficult issue here is whether substantial evidence

supports respondent's determination that decedent did, in fact, duly nominate a discernible beneficiary. If decedent's intention can be clearly ascertained from the document or extrinsic evidence, then the misdescription of the beneficiary's relationship to decedent or even a misnomer of the beneficiary does not defeat a beneficiary's rights (see, Story v Williamsburgh Masonic Mut. Benefit Assn., 95 NY 474; Corder v Prudential Ins. Co., 42 Misc 2d 423; 7A Warren's Heaton, Surrogates' Courts § 34, ¶¶ 2, 3; 31 NY Jur, Insurance, § 1458, at 308 [1963]). An analysis of both the "designation of beneficiary" form and the extrinsic evidence which has been accumulated is thus required.

The name given by decedent as a beneficiary on his "designation of beneficiary" form was either a misnomer or fictitious. Assuming it was a misnomer, the relationship which decedent recited this purported beneficiary as having with him was indisputably erroneous. Additionally, no one with the beneficiary's name lived at the address provided by decedent on the form, or at an address similar thereto. The three items of information about the beneficiary requested on respondent's "designation of beneficiary" form (i.e., [1] the name of the beneficiary, [2] the beneficiary's relationship to the member, and [3] the beneficiary's address) were all either incorrect or fictitious. It is thus not possible to ascertain solely from this document the individual whom decedent intended to be his beneficiary.

Further, in the 11 years since decedent's death, no one has come forward in person and claimed to be "Juanita Jacobelli" despite the fact that numerous public notices have been published during that time. Although three letters were received in 1983 from an individual claiming to be Juanita Jacobelli, the circumstances surrounding these letters were, at best, mysterious. In view of the fact that respondent's office made repeated efforts to bring about a personal meeting with the alleged claimant, none of which were successful, it is most probable that someone learned some of the facts discovered by the investigators and sought a windfall. Extensive research over a substantial number of years has failed to produce relevant information as to the existence, location or death of either Juanita Jacobelli or Juanita Newman Goldman. While it does appear that decedent had a brief encounter with a Juanita Newman Goldman in the mid-1940s, the mere fact that this woman had the same first name as the purported beneficiary fails to provide substantial evidence that she was

his intended beneficiary. This is particularly so since decedent was apparently aware of her full name, correct address and relationship to him, yet included different information as to each of these on his "designation of beneficiary" form. A review of the extrinsic proof gathered in the several investigations conducted over the many years since decedent's death points overwhelmingly to the conclusion that decedent failed to nominate a discernible beneficiary to receive his death benefits. Hence, the death benefits should be awarded to his estate.

CASEY, J. (dissenting). Since it is undisputed that Juanita Newman Goldman actually existed, and since there is no proof that she predeceased decedent, the only disputed factual issue to be reviewed in this proceeding is whether decedent's designation of "Juanita Jacobelli" as his beneficiary was intended to refer to Juanita Newman Goldman. Respondent has determined that the designation was so intended and, in our view, this determination is supported by substantial evidence in the record. In particular, the record establishes that decedent had a relationship with Juanita Newman Goldman in the mid-1940s, at a time when he was not married. She gave birth to a daughter, Sandra Goldman, in 1947 and decedent was adjudicated to be the child's father. Decedent's designation of "Juanita Jacobelli" as his beneficiary occurred in 1949. These facts provide a rational basis for respondent's conclusion that decedent intended to designate Juanita Newman Goldman as his beneficiary.

There are also undisputed facts in the record which would support a conclusion that decedent's designation referred to a fictitious person. For example, the designation contains erroneous information as to the beneficiary's name, address and relationship to decedent. Nevertheless, the fact that the record contains substantial evidence which could support two conflicting conclusions does not render irrational an administrative determination based upon one of those conclusions *(see, Matter of Gonzales v LeFevre,* 105 AD2d 909, 910). The determination should therefore be confirmed and the petition dismissed.

MAHONEY, P. J., and MAIN, J., concur with HARVEY, J.; CASEY and YESAWICH, JR., JJ., dissent and vote to confirm in an opinion by CASEY, J.

Determination annulled, and petition granted, without costs.