OPINION OF THE COURT
Ira Gammerman, J.
Plaintiff, New England Mutual Life Insurance Company, brings this rescission action against defendant, Jeffrey F. Duke (Duke), substituted for by William L. Johnson, as executor of the estate of Jeffrey F. Duke, seeking to rescind a life insurance policy. Plaintiff claims Duke materially misrepresented his relationship with his beneficiary and that such misrepresentation constitutes grounds for rescission.
Defendants counterclaim, seeking attorneys’ fees expended in defending the declaratory judgment action. Defendants also claim that plaintiff’s attempted rescission of the policy constitutes a bad-faith breach of contract for which punitive damages and attorneys’ fees should be awarded. Finally, defendants contend that plaintiff’s rescission action negligently caused Duke emotional distress and seek compensatory damages.
Facts
In 1984, Duke initially purchased a $150,000 life insurance policy on his own life from plaintiff. He listed as beneficiary his lover and business advisor, William Remmelink (Remmelink). On describing his relationship with Remmelink to plaintiff’s agent, Randy Rappaport (Rappaport), Duke was advised by Rappaport to describe Remmelink as his business partner on the insurance application. In 1985, when Duke purchased an additional $50,000 life insurance policy, Remmelink was again named as beneficiary and described as Duke’s business partner. Rappaport, however, designated the insurance as personal coverage and did not complete the portion of the application pertaining to business coverage. Despite this apparent discrepancy, the $50,000 policy was approved and issued.
In September 1986, after Duke contracted AIDS, he submitted a claim under a disability policy with plaintiff. One year later, Duke changed his beneficiary on the $50,000 life insurance policy from Remmelink to various family members and friends, most of whom had financially assisted him during his illness. Aware that Duke had AIDS, plaintiff searched through *682 its records, discovered Duke’s life insurance policies, and in November 1987, brought suit to rescind the $50,000 policy.[1]
Duke died of AIDS on November 13, 1988 whereupon plaintiff paid $150,000 in proceeds from the first life insurance policy to Duke’s named beneficiary, Remmelink.
On March 30, 1992, after trial, I found that Duke’s description of Remmelink as his business partner was not a misrepresentation. I further found that even if there was a misrepresentation, it was not material. Decision was reserved on the issue of defendants’ claim for attorneys’ fees and counterclaims for bad-faith breach and negligent infliction of emotional distress.
Material Misrepresentation
Based on the testimony of Remmelink, who I found to be a credible witness, that he often advised Duke regarding business matters and reviewed his business contracts, I found that Duke and Remmelink had both a personal and business relationship and that there was no misrepresentation.
Even if there was misrepresentation, it was not material. Plaintiff mistakenly likens the description of a beneficiary to a warranty and argues that a mischaracterization of a beneficiary is grounds for rescission, similar to the misrepresentation of a preexisting health condition (Process Plants Corp. v Beneficial Natl. Life Ins. Co., 53 AD2d 214, affd 42 NY2d 928) or marital status (Makel v John Hancock Mut. Life Ins. Co., 95 App Div 241). In Matter of Jacobelli v Regan (131 AD2d 166), however, the Court held that a mischaracterization of the relationship between an insured and a beneficiary does not invalidate an insurance policy. The Court reasoned that the relationship between the insured and his beneficiary is considered to be a description and not a warranty. The instant case involves a description of a nontraditional, nonfamilial relationship, not a warranty, which, even if misrepresented, would not invalidate the policy.
Pursuant to Insurance Law § 3105, in order to rescind an insurance policy because of a misrepresentation, the information must be such that the insurer would not have issued the policy had it known the truth of the facts represented. The *683 insurer must also produce documentary proof of company rules to that effect. (Winnick v Equitable Life Assur. Socy., 110 AD2d 314.)
Assuming, arguendo, that Duke did misrepresent his relationship with Remmelink, the testimony of plaintiff’s own employees on deposition and trial disproves its materiality. Plaintiff’s veteran underwriting officer, Conrad Todd (Todd), admitted that after 24 years of experience as an underwriter he had never known plaintiff to rescind a policy because of a misrepresentation of the relationship between an insured and a beneficiary.
Plaintiff also claims that the lack of joint indebtedness between Duke and Remmelink further supports its claim of materiality. Despite this claim, Todd was unable to name any instance where a life insurance application by an unmarried couple was rejected for lack of joint indebtedness. Indeed, it is not disputed that plaintiff would permit an unmarried individual to obtain insurance for 20 times annual earnings and name his or her estate as beneficiary.[2]
Further, no written guidelines or other evidence were introduced by plaintiff to support its claim that for unmarried couples, there must be a joint indebtedness equal to the amount of life insurance. Since there was no material misrepresentation here, it is not necessary to reach the issues of estoppel raised by Rappaport’s advice to Duke and Duke’s change of beneficiary, which change was accepted by plaintiff.
Attorneys’ Fees
Defendants seek attorneys’ fees incurred in defending this action.
While attorneys’ fees are rarely awarded in actions involving breach of contract, two exceptions exist which are applicable here. First, attorneys’ fees can be awarded to insureds forced to defend against an insurer’s action to escape coverage. (See, U.S. Liab. Ins. Co. v Staten Is. Hosp., 162 AD2d 445.) Second, attorneys’ fees may be awarded where there has been *684 an unreasonable, bad-faith denial of coverage. (See, Sukup v State of New York, 19 NY2d 519.)
In U.S. Liab. (supra), a carrier instituted a declaratory judgment action against its insured, based on an exclusion in the policy. The insured successfully defended the action, and attorneys’ fees were awarded to the insured, the Court quoting from Mighty Midgets v Centennial Ins. Co. (47 NY2d 12, 21): "attorneys’ fees 'may not be had in an affirmative action brought by an [insured] to settle its rights * * * but only when [the insured] has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations.’ ” (U.S. Liab. Ins. Co. v Staten Is. Hosp., supra, 162 AD2d, at 447.) Similarly plaintiff here instituted an action against the insured, prior to his death, in an effort to escape its policy obligations.
Plaintiff cites Mighty Midgets (supra) to support its argument that only when the insured is required to litigate with a third party, because of the insured’s refusal to provide coverage, should the insured be allowed to recover attorneys’ fees. (See, Doyle v Allstate Ins. Co., 1 NY2d 439 [attorneys’ fees recoverable when insured is forced to defend against third-party claim]; see also, Estate of Coppersmith v Blue Cross & Blue Shield, 177 AD2d 373 [attorneys’ fees recoverable when health insurance carrier refused to pay and forced insured to litigate with hospital].) However, when an insurer institutes an action against its insured, whether it is a carrier of liability, life or health insurance, it is seeking to have its obligations determined by the court and, in so doing, casts the insured into a defensive posture. The logical extension of U.S. Liab. (supra) here supports the award of attorneys’ fees.
In Sukup (supra, 19 NY2d, at 522), the Court of Appeals noted that attorneys’ fees should not be awarded unless "more than an arguable difference of opinion” occurs and the insurer evinces "a gross disregard for its policy obligation.” Such gross disregard is found here. Upon learning that Duke had contracted AIDS and that there would, most likely, be a claim asserted under the life insurance policy within a short period of time, plaintiff searched through its files in an effort to determine a way to escape its obligation. Such an investigation with respect to the insurance application to determine if the insured misrepresented his or her health status is appropriate. Such an investigation to find a bogus basis for disclaiming because the insured was a male homosexual (at higher risk for contracting AIDS than the general public) constitutes *685 discrimination, both on the basis of disability and marital status.
Certainly, if Duke and Remmelink were married or Duke’s illness was one not associated with homosexuality no attempt to rescind the policy would have been made. It would have been a violation of both Insurance Law § 2607 and Executive Law § 296 (2) for plaintiff to refuse coverage because Duke and Remmelink were not married. In essence, the action instituted by the plaintiff is an example of postcoverage discrimination.
Defendants presented records of legal fees in the amount of $127,480.50 which were virtually uncontested. Although punitive damages may be appropriate for violations of the Executive Law, under the circumstances here, the award of attorney’s fees in the amount testified to by defendants’ counsel will, in my view, be sufficient to deter plaintiff and other insurance carriers from engaging in similar discriminatory conduct.
With respect to the claim for damages for infliction of emotional distress, aside from testimony that Duke was upset and concerned about the pending litigation, the record contains insufficient proof to justify such an award.
In summary, it is my judgment that plaintiff is not entitled to rescission. Therefore, the complaint is dismissed, and the clerk is directed to enter a judgment in favor of the defendants against plaintiff in the amount of $127,480.50 with appropriate interest costs and disbursements.

. By 1987, the two-year incontestability period had run with regard to the first policy. The second policy was purchased on November 12,1985; this lawsuit was brought on November 10, 1987, two days before the incontestability period ran.

. Twenty times Duke’s last known salary of $12,000, earned in 1982, would be approximately $240,000, an amount in excess of Duke’s $200,000 total insurance with plaintiff. Plaintiff, however, attempted to rescind Duke’s $50,000 policy because he and Remmelink did not have an amount of joint indebtedness equal to $200,000. Based on Todd’s testimony, Duke could have insured his own life up to $240,000, with Remmelink receiving the proceeds through Duke’s estate.