**LIBERTY SURPLUS INSURANCE CORPORATION, Plaintiff–Appellant–Cross-Appellee,**

v.

**THE SEGAL COMPANY, Defendant-Counter-Claimant-Counter-Defendant-Appellee-Cross-Appellant.**

**Docket Nos. CV04–5562, CV04–6005.**

United States Court of Appeals, Second Circuit.

Argued: July 15, 2005.

Decided: Aug. 9, 2005.

---

5. We do not answer the broader question, left open in *Noland,* of whether the lack of credi-

tor misconduct is itself dispositive.

Jonathan Bruno, Kaufman Borgest & Ryan LLP (A. Michael Furman, on the brief; Terry D. Weissman, Christopher D. Mickus, Neal, Gerber & Eisenberg LLP, Chicago, Ill., of counsel), New York, NY, for Plaintiff–Appellant–Cross–Appellee.

Randy Paar, Esq., Dickstein Shapiro Morin & Oshinsky, LLP (John P. Winsbro, Andrew N. Bourne, of counsel), New York, NY, for Defendant–Counter–Claimant–Counter-Defendant-Appellee-Cross-Appellant.

Before: STRAUB and SACK Circuit Judges, KRAVITZ, District Judge.*

* The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

PER CURIAM.

In a summary order filed concurrently with this opinion, we affirmed the decision of the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge* ) to grant summary judgment in favor of The Segal Company ("Segal") with respect to a coverage dispute between Segal and its second-layer excess insurance provider, Liberty Surplus Insurance Corporation ("Liberty"). We assume the parties' familiarity with the facts, procedural history, issues on appeal, and the concurrently filed summary order. We now address Segal's cross-appeal, in which Segal argues that the District Court erred in granting Liberty's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Segal's counterclaim for attorneys' fees incurred in defending the action brought by Liberty.

In particular, we address the basis for attorneys' fees established by *Mighty Midgets, Inc. v. Centennial Insurance Co.,* which states that an insured may recover attorneys' fees and costs when it "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085, 416 N.Y.S.2d 559, 564 (1979). Despite this broad language, we have held that *Mighty Midgets* only applies "when a policyholder has been cast in a defensive posture by its insurer *in a dispute over the insurer's duty to defend.*" *Employers Mut. Cas. Co. v. Key Pharms.,* 75 F.3d 815, 824 (2d Cir.1996) (per curiam) (emphasis added). The District Court relied on our precedent of *Employers Mutual* in rejecting Segal's claim for attorneys' fees under *Mighty Midgets.* Segal, however, argues that a recent decision by the New York Court of Appeals in *U.S. Underwriters Insurance Co. v. City Club Hotel, LLC,* 3 N.Y.3d 592, 822 N.E.2d 777, 789 N.Y.S.2d 470 (2004),

issued after the District Court's decision in this case, overrules our prior limitation of *Mighty Midgets* and allows for attorneys' fees whenever an insurer brings, and loses, a suit to disclaim the duty to defend *or* indemnify. For the reasons explained below, we find that *City Club Hotel* has not so altered our precedent and that attorneys' fees are not warranted under *Mighty Midgets* or *City Club Hotel.* We further reject the alternative arguments raised by Segal and AFFIRM the judgment of the District Court dismissing Segal counterclaim for attorneys' fees with prejudice.

 "Under New York law, it is 'well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk.'" *Employers Mut.,* 75 F.3d at 824 (quoting *Sukup v. State,* 19 N.Y.2d 519, 522, 227 N.E.2d 842, 844, 281 N.Y.S.2d 28, 31 (1967)). We have explained that, while the New York Court of Appeals in *Mighty Midgets* recognized this rule against attorneys' fees, it carved out a "narrow exception" that "arises when a policyholder has been cast in a defensive position by its insurer in a dispute over the insurer's duty to defend." *Id.* The reasoning behind the *Mighty Midgets* exception is that an insurer's duty to defend extends to any action arising out of a covered event, including an action brought by the insurer to free itself from covering the event. *See Aetna Cas. & Sur. Co. v. Dawson,* 84 A.D.2d 708, 709, 444 N.Y.S.2d 10, 12 (1st Dep't 1981), *aff'd,* 56 N.Y.2d 1022, 439 N.E.2d 398, 453 N.Y.S.2d 683 (1982), *cited by Employers Mut.,* 75 F.3d at 824; *see also Mighty Midgets,* 47 N.Y.2d at 21, 389 N.E.2d at 1085, 416 N.Y.S.2d at 564 (stating that the basis for attorneys' fees "find[s] support in the theory that an insurer's responsibility to defend reaches the defense of any actions arising out of the

occurrence"). Thus, in *Employers Mutual*, which involved a second-layer excess insurance policy, we found that "[s]ince the duty to defend is not at issue ... attorney's fees cannot be awarded." *Employers Mut.*, 75 F.3d at 824; *see also Dawson*, 84 A.D.2d at 709, 444 N.Y.S.2d at 12 (rejecting claim for attorneys' fees where dispute did not involve a duty to defend).

Segal argues that a recent case by the New York Court of Appeals, issued after the District Court's decision in the current action, supercedes this Court's interpretation of *Mighty Midgets* by extending the entitlement of attorneys' fees to any action brought by an insurer to disclaim its duty to indemnify the insured. We disagree. In *U.S. Underwriters Insurance Co. v. City Club Hotel, LLC*, 369 F.3d 102 (2d Cir.2004), we certified to the New York Court of Appeals the question of whether *Mighty Midgets* applies where an insurer has provided a defense in an underlying action but then brings an action for declaratory judgment that it has no duty to defend. *Id.* at 112. The New York Court of Appeals answered this question in the affirmative, holding that, "under *Mighty Midgets*, an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." *City Club Hotel*, 3 N.Y.3d at 598, 822 N.E.2d at 780, 789 N.Y.S.2d at 473. Segal contends that the New York Court of Appeals expanded *Mighty Midgets* by allowing for attorneys' fees where an insurer brings suit to escape the "duty to defend *or* indemnify." But the New York Court of Appeals made it clear that the recovery of attorneys' fees under *Mighty Midgets* "is incidental to the insurer's contractual duty to defend," and *City Club Hotel* certainly involved the duty to defend and not merely the duty to indem-

nify. *Id.; see also id.*, 3 N.Y.3d at 597–98, 822 N.E.2d at 780, 789 N.Y.S.2d at 473 ("The reasoning behind *Mighty Midgets* is that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against the insurer's declaratory judgment action."). Therefore, *City Club Hotel* does not expand the rule in *Mighty Midgets* to any insurance dispute involving the duty to indemnify, regardless of whether the insurer has a duty to defend the insured.

■ Segal also contends that, even if the *Mighty Midgets* rule is limited to situations in which the insurer has a duty to defend, Liberty has a duty to defend in this case. The Liberty policy states that it "incorporates by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the Primary Policy ... except as regards the premium, the limit of liability, the policy period, and except as otherwise provided herein." Segal contends that the insuring clauses of the Primary Policy issued by Certain Underwriters at Lloyd's ("Lloyd's") includes the duty to defend, and that the Liberty policy thus incorporates the duty to defend. In this regard, Segal cites cases for the proposition that an excess insurer's duty to defend arises when there is a showing that the primary insurer's coverage will be exhausted. *See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 1992 WL 133899, at *6 (S.D.N.Y. Apr.21, 1992). The Liberty policy also provides that it "shall continue in force as primary insurance ... [i]n the event of exhaustion of the Underlying Policies," and it includes a "Defense and Settlement" provision stating that Segal "shall not incur costs of defense, where the ... costs of defense are reasonably likely to involve the limit of liability of this

Policy, without the Insurer's prior written consent."

It thus may be that, under some circumstances, Liberty could have a duty to defend Segal. For example, if the Suffolk County action exhausted the limits of the Lloyd's policies but not the Liberty policy, it is conceivable that the Liberty policy may "continue in force as primary insurance" and result in the duty to defend a different action. But we need not decide whether the Liberty policy generally incorporates a potential duty to defend or could require a defense in other circumstances. There is another basis for rejecting the *Mighty Midgets* basis for attorneys' fees in this case.

■ In this case, Lloyd's is the primary insurer with the duty to defend the Suffolk County claims. As the New York Court of Appeals has clearly stated, the primary insurer has a duty to defend "without any entitlement to contribution from an excess insurer," and while excess carriers have discretion to protect their interests by participating in a defense, "there is no obligation to so." *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.,* 4 N.Y.3d 451, 456, 828 N.E.2d 959, 961, 796 N.Y.S.2d 2, 4 (2005). Thus, all things being equal, Liberty has no duty to defend the Suffolk County claims. And there is no suggestion that Lloyd's is not providing a defense, that the Lloyd's policies have been exhausted, or that any party has sought to require Liberty to participate in the defense.

As explained above, the rationale of *Mighty Midgets,* as reiterated in *City Club Hotel,* is that an insurer with a duty to defend must provide a defense (or reimburse the insured's litigation expenses) for any action arising out of the claim or occurrence that triggers the duty to defend, including an action brought by the insurer itself. That is, it is the contractual agreement to provide a defense that gives rise to the basis for attorneys' fees. This rationale was developed in the context of primary insurers litigating a duty to defend that would have ripened upon the assertion of the underlying claims. We find it unlikely the New York Court of Appeals would extend this rationale to a case, such as this one, involving an excess carrier with, at best, only a secondary duty that is entirely contingent on the exhaustion of the underlying policies and that has never actually been triggered. Under the reasoning of *City Club Hotel* and *Mighty Midgets,* because Liberty has no current duty to defend the Suffolk County claims, it would seem that Liberty has no ripened contractual duty to "defend" the current action arising out of those claims.

There may be cases where an excess insurer's duty to defend has not actually been triggered, but where it likely will be and the excess insurer has brought a declaratory judgment action to avoid a looming duty to defend. We express no opinion on whether *Mighty Midgets* could support attorneys' fees in such a situation. There is no suggestion that Liberty will have to provide a defense for the Suffolk County action, and Liberty's duty to defend the Suffolk County claims has never been at issue in this case. We therefore hold that there is no entitlement to attorneys' fees under *Mighty Midgets* in this case because any duty by the excess insurer to defend the underlying action has not been triggered and was not ever at issue in the insurer's declaratory judgment action.

We note that our holding is consistent both with the recent decision of the New York Court of Appeals in *City Club Hotel* and our prior decision in *Employers Mutual,* where we held that "[s]ince the duty to defend is not at issue in this case, we conclude that ... attorneys' fees cannot be

awarded." *Employers Mut.*, 75 F.3d at 824. We also note that providing Segal with attorneys' fees in this case would dramatically expand *Mighty Midgets'* "narrow exception" to the long-standing rule against awarding attorneys' fees to a winning litigant. *See Employers Mut.*, 75 F.3d at 824; *see also Mighty Midgets*, 47 N.Y.2d at 22, 389 N.E.2d at 1085, 416 N.Y.S.2d at 564 (declining to add exceptions to the "ingrained policy" against attorneys' fees by allowing for fees where the insured brings suit to enforce the duty to defend). That is, to rule in favor of Segal, we would either have to find that attorneys' fees are due whenever an insurer brings suit to disclaim the duty to indemnify, or whenever an excess insurance policy incorporates a primary policy with a duty to defend, regardless of whether the excess insurer actually has (or realistically will have in the future) a duty to defend the underlying claims. We decline to expand the *Mighty Midgets* exception to the point that it swallows the rule.

■ Finally, apart from *Mighty Midgets*, Segal argues that it may be entitled to attorneys' fees under *Sukup v. State,* which held that such fees could be recovered where there is "more than an arguable difference of opinion between carrier and insured over coverage" and there is a showing of "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup*, 19 N.Y.2d at 522, 227 N.E.2d at 844, 281 N.Y.S.2d at 31. We agree with the District Court's decision to deny fees under *Sukup*. Segal never alleged bad faith in its complaint. Moreover, as indicated in the summary order filed concurrently with this opinion, Liberty's basis for disclaiming coverage has

been rooted in a tension between the Extended Reporting Period ("ERP") endorsement and the Underlying Limits of Liability identified in the Liberty Policy Declarations. While we have agreed with Segal's position that the ERP is unambiguous and requires Liberty to indemnify Segal subject to exhaustion of the Underlying Policies, the dispute reflects an "arguable difference of opinion" rather than bad faith by the insurer.

### CONCLUSION

For the above-stated reasons, we AFFIRM the judgment of the District Court dismissing with prejudice Segal's counterclaim for attorneys' fees.