[850 NYS2d 312]

In the Matter of the Estate of John C. Pease, Deceased. David N. Phelps, as Executor of John C. Pease, Deceased, Respondent; Edward Pease et al., Appellants.

Fourth Department, February 1, 2008

### APPEARANCES OF COUNSEL

*Croucher, Jones & Johns*, Canandaigua (*Walter W. Jones, Jr.*, of counsel), for appellants.

*Gage, Gage & Bleakley*, Geneva (*S. Scott Porter* of counsel), for respondent.

### OPINION OF THE COURT

MARTOCHE, J.

Edward Pease and James Pease (collectively, objectants) appeal from an order of Surrogate's Court that settled petitioner's final accounting of decedent's estate. On March 31, 2000, decedent applied for a group variable annuity certificate from Hartford Life. On the annuity contract application, decedent designated "James Pease (as executor in the will of John Pease) 100%" as the only beneficiary. James is decedent's great-nephew and was the named executor of decedent's estate under the will that was in effect at the time decedent applied for the annuity. Subsequent to executing the annuity contract, decedent executed a new will, dated February 21, 2002, which named petitioner, one of decedent's nephews, as executor of decedent's estate. Decedent's bequests in the February 2002 will included, inter alia, a specific bequest to Edward Pease, another nephew, of "[a]ll farm machinery that I own at the time of my death" and a specific bequest to petitioner of "[a]ll the contents of my home and all the contents of my shop."

Decedent died on October 2, 2004. On November 4, 2004, objectants, petitioner and a mutually agreed-upon appraiser, George Coryn, went to decedent's properties to appraise the farm machinery bequeathed to Edward. Coryn appraised only the items he was asked to appraise, and neither petitioner nor objectants raised any objections to the items that were appraised or alleged that other items should have been included in the appraisal. Edward filed a notice of claim against decedent's estate in May 2005, however, alleging that he did not receive all of the

farm machinery to which he was entitled under decedent's February 2002 will.

After probate of decedent's will, petitioner disputed that James, in his individual capacity, was the beneficiary of decedent's annuity. In April 2005, James's attorney sent a letter to Hartford Life asserting that James should be paid as the named beneficiary of the annuity and that the parenthetical designation following his name on the application was no more than mere clarification of identity. Hartford Life responded that, although James was the named beneficiary, he was designated only in his capacity as executor of decedent's estate and, "[t]herefore, when the Executor . . . was changed, the beneficiary designation changed as well." Upon receipt of the proceeds of the annuity, petitioner placed the funds in an interest-bearing account pending final determination of whether James or decedent's estate is the rightful owner of the funds.

Petitioner sought approval of the final accounting of decedent's estate in 2006, and objectants filed objections seeking, inter alia, a determination that James is the rightful owner of the annuity funds and that Edward did not receive his entire bequest under the February 2002 will. After a hearing, the Surrogate denied the objections. With respect to the annuity, the Surrogate determined that, pursuant to the language of the annuity contract, James was to receive the funds only in his role as executor of decedent's estate and, thus, the Surrogate held that the funds were intended to be part of decedent's estate. The Surrogate distinguished the decision of the Court of Appeals in *McCarthy v Aetna Life Ins. Co.* (92 NY2d 436 [1998]) that a decedent may not change the designation of a beneficiary in a life insurance policy by means of a testamentary disposition when the policy sets forth another procedure for changing the beneficiary, because here the designated beneficiary of the annuity, decedent's estate, was never actually changed. With respect to the decedent's bequest of farm machinery to Edward, the Surrogate determined that Edward had received all of the items designated and appraised by the parties' mutually agreed-upon appraiser, and that the disputed items that were not appraised were not contemplated by the parties to be included in decedent's bequest to Edward. We conclude that the order should be affirmed.

▪ The particular facts of this case appear to present a novel issue in New York. It is well settled that "the method prescribed by the insurance contract must be followed in order to effect a

change of beneficiary" (*id.* at 440), and a relationship description included with a named beneficiary is generally regarded as merely descriptive (*see Matter of Jacobelli v Regan,* 131 AD2d 166, 169 [1987]). The facts in this case, however, are distinguishable from *McCarthy* and its progeny. Here, the description of the relationship between James and decedent in the annuity contract was not merely that James was decedent's great-nephew. Rather, the annuity contract described James "as executor in the will of John Pease." We agree with the Surrogate that the designation of James "as executor" conferred upon him a fiduciary duty with respect to the annuity proceeds, rather than a personal interest in the annuity proceeds.

There are several federal and state cases supporting the Surrogate's conclusion (*see generally Duggins v Fluor Daniel, Inc.,* 217 F3d 317, 319 [5th Cir 2000]; *Faircloth v Northwestern Natl. Life Ins. Co.,* 799 F Supp 815, 817 [SD Ohio 1992]; *Murino v Reynolds,* 1987 WL 859627, 1987 RI Super LEXIS 171 [Mar. 20, 1987, Pederzani, J.], *affd* 550 A2d 1058 [RI 1988]). Those cases appear to be in line with the relevant principles set forth in legal treatises (*see e.g.* 31 Am Jur 2d, Executors and Administrators § 482 ["(W)here a (life insurance) policy is payable to the insured or to his executors, administrators, assigns, or 'legal representatives,' without designation of other beneficiaries, it is deemed payable to the estate, and the proceeds constitute general assets of the estate"]; 46A CJS, Insurance § 1949 ["Ordinarily, the proceeds of a life insurance policy are payable to the executor or administrator of the insured as assets of the estate where by the terms of the policy the proceeds are payable to the insured or to the insured's estate, legal representatives, executors or administrators, or executors, administrators, or assigns"]; 4 Couch on Insurance 3d § 59:21 ["A policy which designates the 'executors and administrators' of the insured as beneficiary is payable to the executors under the will or the administrators of the estate of the insured. Such payment is made to the beneficiary in his or her fiduciary capacity so that a policy payable to a named person described as the (executor) of the will of the insured is received and held by the (executor) in that capacity, and (he or) she is not permitted to retain the proceeds for (his or) her individual benefit"]).

In *Duggins,* the decedent replaced his daughter as the beneficiary of his ERISA plan by crossing out her name and writing in " 'David D. Duggins' " (217 F3d at 319). Two lines below the line for the beneficiary's name was a line for the designation of

the decedent's relationship to the beneficiary, and the decedent wrote "Attorney and Executor," although Duggins was not, in fact, the executor of decedent's estate at the time (*id.* at 319). The Fifth Circuit reversed the United States District Court for the Eastern District of Louisiana and concluded that Duggins was named as a beneficiary individually, rather than in his fiduciary capacity, and that the relationship designation was merely a truthful answer to the relationship query (*see id.*; *see also Murino*, 1987 WL 859627, 1987 RI Super LEXIS 171 [holding that the sole named beneficiary of an insurance policy took the proceeds in her individual capacity, although she was later designated administratrix of the decedent's estate]).

In *Faircloth*, the decedent designated his brother as the beneficiary of his life insurance policy, writing " 'Faircloth James H., Administrator' " on the group enrollment card (799 F Supp at 817). Decedent was not married at that time. He later married, and his wife was named the administratrix of his estate (*see id.*). The defendant's insurance company paid the proceeds of the policy to James Faircloth, although he was never named administrator of the decedent's estate (*see id.*). The United States District Court for the Southern District of Ohio determined that the administrator of the decedent's estate was the intended beneficiary, rather than James Faircloth (*see id.*). The court found particularly relevant the fact that James Faircloth was not designated solely by name, or as " 'my brother,' " and concluded that " 'Faircloth James H., Administrator' is more than a description [because] it indicates the legal status in which James H. Faircloth was to be the administrator" (*id.*).

We conclude that the result reached in *Faircloth* is the proper result in this case and that the decision of the Court of Appeals in *McCarthy* does not apply here because the beneficiary was not changed by decedent's February 2002 will. The plain language in the annuity contract establishes that the beneficiary was always the estate, by its executor, and not James individually. We further note that James was not identified as decedent's great-nephew on the annuity contract but, rather, he was identified as the executor of decedent's estate. We thus conclude that the Surrogate properly determined that the proceeds of the annuity contract belong to decedent's estate.

■ We also reject the contention of objectants that the Surrogate erred in denying their objection with respect to decedent's bequest of farm machinery to Edward. The Surrogate credited the testimony of the appraiser concerning the nature of each

disputed item and accepted the appraiser's interpretation of whether the disputed items were farm machinery. Inasmuch as the Surrogate's determination is based upon a fair interpretation of the evidence, it should not be disturbed (*see Matter of Alpert*, 37 AD3d 187, 188 [2007], *lv denied* 9 NY3d 812 [2007], *lv dismissed* 9 NY3d 952 [2007]). Further, with respect to any of the farm machinery that allegedly disappeared or was sold without Edward's knowledge, the evidence presented at the hearing establishes that petitioner acted diligently in his duty as executor in attempting to turn those items over to Edward (*see generally Morris v Canadian Four State Holdings* [appeal No. 2], 254 AD2d 705, 706 [1998]).

Accordingly, we conclude that the order should be affirmed.

GORSKI, J.P., LUNN, FAHEY and PINE, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.