(October 6, 2015)

■ United States Fire Insurance Company, Respondent, v Nine Thirty FEF Investments, LLC, et al., Appellants. [17 NYS3d 118]—

Judgment, Supreme Court, New York County (Jeffrey K. Oing, J.), entered February 25, 2014, awarding damages to defendants, unanimously reversed, on the law, and it is declared that exclusion x of the financial institution bonds issued by plaintiff excludes coverage for defendants' losses. Appeals from order and judgment (one paper), same court and Justice, entered October 1, 2013, and order, same court (Richard B. Lowe, III, J.), entered June 22, 2011, unanimously dismissed, without costs, as subsumed in the appeals from the final judgment. The Clerk is directed to enter judgment accordingly.

Defendants, Nine Thirty FEF Investments, LLC (FEF) and Nine Thirty VC Investments, LLC (VC), were formed to invest and trade in securities. In 2005 and 2006, VC Investments opened accounts with Bernard L. Madoff Investment Securities LLC (Madoff Securities) pursuant to "Customer Agreements" referring to Madoff Securities as "the 'Broker.'" In 2008, VC and FEF obtained financial institution bonds from plaintiff.*

Each bond contains exclusion x, which states: "This bond does not cover: . . . (x) loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who *is* a securities . . . broker" [emphasis added]). In addition to exclusion x, each bond contains rider 9 (the Outside Investment Advisor Rider), whereby plaintiff agreed to indemnify defendants for "[l]oss resulting directly from the dishonest acts of any Outside Investment Advisor, named in the Schedule below, solely for their duties as an Outside Investment Advisor, on behalf of the Insured." The schedule mentioned in the rider includes Madoff Securities as an Outside Investment Advisor.

The rider defines "Outside Investment Advisor" as "any firm, corporation or individual named in the Schedule for the . . . Outside Investment Advisor [Rider], and an employee, officer or partner of such Outside Investment Advisor." The rider excludes "[l]oss resulting from any acts by an Outside Investment Advisor acting in any capacity other than on behalf of the Insured." It also states, "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Bond, other than as stated herein."

On December 11, 2008, the Securities and Exchange Commission (SEC) filed a complaint against Mr. Madoff and Madoff Securities (together, Madoff). It alleged that Madoff Securities

---

* A financial institution bond is insurance issued to banks and other financial institutions to protect against losses caused by theft and dishonest investment advisors and the like.

was both a broker dealer and an investment adviser. It also alleged that Madoff had "committed fraud through the investment adviser activities of" Madoff Securities. Later that month, defendants notified plaintiff that they were making claims under the bonds. In early 2009, Madoff was charged with, inter alia, investment advisor fraud. Shortly thereafter, he pleaded guilty.

On October 28, 2009, plaintiff denied defendants' claims because, among other reasons, "Madoff Securities was acting as a broker in its dealings with [defendants]. As a result, there can be no coverage under the Outside Investment Advisor Rider. Similarly, Exclusion (x) of the Bond excludes coverage for any losses incurred by the Insureds."

Plaintiff commenced the instant declaratory judgment action, alleging, among other things, that defendants' claims were not covered under rider 9 because "the losses claimed by [defendants] did not result directly from the dishonest acts of Madoff Securities acting solely as an outside investment advisor . . . Rather, the losses resulted from the dishonest acts of Madoff Securities acting, at least in part, as a broker." It also alleged that defendants' losses were excluded by exclusion x. After issue was joined and discovery undertaken, plaintiff moved for summary judgment.

In an order entered June 22, 2011, the court granted the motion to the extent of dismissing defendants' counterclaims for attorneys' fees, and otherwise denied it.

The court noted plaintiff's argument "that there is no coverage under the Bonds, because [defendants'] losses were not caused by . . . Madoff . . . acting solely as an outside investment advisor." It rejected this argument, saying, "Rider 9 defines an 'Outside Investment Advisor' as any firm, corporation, or individual named in the Schedule . . . Rider 9 does not . . . require that those entities . . . only be investment advisors."

The court found that, "while the language of Rider 9 is clear, an ambiguity exists when read with Exclusion (x)." Similarly, the court found that, while exclusion x was clear by itself, "its meaning is unclear when read with Rider 9." The court said that the issue of whether defendants' losses "are precluded by Exclusion (x) because Madoff is also a registered securities broker . . . cannot be resolved on these motions for summary judgment." We disagree.

Exclusion x excludes coverage for losses "resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who *is* a securities . . . broker"

(emphasis added). It does not provide that the non-employee must have been "acting as" a securities broker. It is undisputed that Bernard Madoff was not defendants' employee (as that term is defined in the bonds) and that Mr. Madoff Investment Securities LLC was a registered broker-dealer during the entire period in which it dealt with defendants (*see Jacobson Family Invs., Inc. v National Union Fire Ins. Co. of Pittsburgh, PA*, 129 AD3d 556 [1st Dept 2015]).

It bears mentioning that defendants knew how to delete an exclusion. For example, riders 2, 8, and 19-20 provide that certain exclusions do not apply to the coverages created by those riders. If defendants had wanted the broker exclusion to be inapplicable to Outside Investment Advisers (rider 9), they should have said so.

Alternatively, if defendants had added outside investment advisers to the policy's definition of "Employee," the broker exclusion would have been inapplicable because that exclusion applies only to "non-Employees." Defendants knew how to expand the definition of "Employee"—rider 3 of each policy does so by adding employees of Jacobson Family Investments and Nine Thirty Capital Management.

The Outside Investment Advisor Rider (rider 9) does not mention exclusion x and does not contradict or alter the exclusion's clear and unambiguous terms (*see McGinley v Odyssey Re [London]*, 15 AD3d 218 [1st Dept 2005]). Further, our interpretation of exclusion x does not leave rider 9 "without force and effect" (*see Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221-222 [2002] [internal quotation marks omitted]). The bonds could still provide coverage for losses resulting directly from the dishonest acts of outside investment advisers who are not brokers. Defendants did not show that all—or even the majority—of the outside investment advisers listed on rider 9 were also brokers. Accordingly, our interpretation of the bonds does not render them illusory (*see Associated Community Bancorp, Inc. v St. Paul Mercury Ins. Co.*, 118 AD3d 608 [1st Dept 2014]).

The court, however, correctly determined that defendants are not entitled to attorneys' fees, as plaintiff's rescission claims, although unavailing, do not evince bad faith (*see Sukup v State of New York*, 19 NY2d 519, 522 [1967]).

We have considered the defendants' remaining contentions for affirmative relief and find them unavailing. Concur—Gonzalez, P.J., Mazzarelli, Acosta and Kapnick, JJ.