Mark **GELFMAN** and Yanis Gelfman, pro se, Plaintiffs,

v.

**CAPITOL INDEMNITY CORPORATION, Capitol Specialty Insurance Corporation, and Capitol Transamerica Corporation, Defendants.**

No. 11–CV–236 (DLI)(RLM).

United States District Court, E.D. New York.

Signed Aug. 14, 2014.

Mark Gelfman, Brooklyn, NY, pro se.

Yanis Gelfman, Brooklyn, NY, pro se.

Jay Kenigsberg, Michael E. Buckley, Rivkin Radler, LLP, Uniondale, NY, for Defendants.

### *SUMMARY ORDER ADOPTING REPORT AND RECOMMENDATION*

DORA L. IRIZARRY, District Judge:

Plaintiffs Mark and Yanis Gelfman ("Plaintiffs" or the "Gelfmans") filed this action against Defendants ("Defendants" or "Capitol"), alleging that Capitol breached its contractual obligations under two insurance policies when it disclaimed coverage of the Plaintiffs in a lawsuit commenced by Yuri and Dmitri Kuklachev (the "Kuklachevs"), arising out of Plaintiffs' alleged trademark infringement of the "Moscow Cat Theater" mark. The parties cross-moved for summary judgment (*see* Motion for Summary Judgment in Favor of Plaintiffs, Doc. Entry No. 74;

Notice of Defendants' Motion for Summary Judgment, Doc. Entry No. 78), and the Court referred these motions to the Honorable Roanne L. Mann, United States Magistrate Judge, to prepare a Report and Recommendation. On June 10, 2014, Magistrate Judge Mann issued her Report and Recommendation ("R & R"), recommending that the Gelfmans' motion for summary judgment be denied and that Capitol's motion for summary judgment be granted. (*See* R & R, Doc. Entry No. 99.) Plaintiffs filed objections to the R & R (*see* Plaintiffs' Objections to Magistrate Judge's Report and Recommendation ("Pls.' Obj."), Doc. Entry No. 101), which Defendants opposed (*see* Defendants' Response to Plaintiffs' Objections to Magistrate Judge's Report and Recommendation ("Defs.' Resp."), Doc. Entry No. 102). For the reason set forth below, the R & R is adopted in its entirety.

## STANDARD OF REVIEW

When a party objects to an R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* FED. R. CIV. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the R & R for clear error. *Robinson v. Superintendent, Green Haven Correctional Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F.Supp.2d 290, 292 (S.D.N.Y.2002)). The

district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

## DISCUSSION

■ Plaintiffs object to the R & R "in its entirety." Plaintiffs' objections, almost uniformly, are conclusory, immaterial, or mere reiterations of arguments litigated before the Magistrate Judge. Nonetheless, in light of Plaintiffs' *pro se* status, the Court has carefully considered each of Plaintiffs' objections and addresses herein those objections that arguably warrant discussion.[1]

First, Plaintiffs complain that the factual background section in their motion for summary judgment should have been construed as a proper Statement of Material Facts under Local Civil Rule 56.1. (Pls.' Obj. at 1.) Plaintiffs do not dispute that they failed to annex to their motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). Nonetheless, although "[f]ailure to submit such a statement may constitute grounds for denial of the motion" *id.*, in light of Plaintiffs' *pro se* status, the magistrate judge considered those factual assertions that actually were supported by evidentiary submissions. *See Erickson*, 551 U.S. at 94, 127 S.Ct. 2197 (finding that *pro se* submissions should be "held to less stringent standards

---

1. In reviewing Plaintiffs' submissions, the court is mindful that, "[a] document filed *pro se* is 'to be liberally construed' and 'a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citations omitted). Accordingly, the court interprets the Plaintiffs' submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006).

than [those] drafted by lawyers"). Accordingly, the Court finds that the magistrate judge properly considered the factual record.

Next, Plaintiffs object to the R & R's characterization of the Gelfmans as "promoters" rather than "producers" of the Moscow Cats Theater. (Pls.' Obj. at 1.) However, the R & R accurately indicates that the Kuklachevs alleged that Plaintiffs were their promoters in connection with the related case of *Kuklachev v. Gelfman,* 08–cv–2214 (DLI)(VVP) (the *"Kuklachev* action").

Plaintiffs also take issue with the magistrate judge's finding that the Gelfmans failed to provide Capitol with timely notice of a potential claim under the insurance policies at issue. (Pl.'s Obj. at 2–3.) Plaintiffs do not dispute that they never notified Capitol after receiving a May 31, 2007 cease-and-desist letter from the Kuklachevs threatening legal action. Nor do they dispute that Capitol first learned of the claim thirteen months later through one of the Gelfmans' codefendants in the *Kuklachev* action. However, Plaintiffs argue that their failure to notify Capitol of the potential claim should be excused since they had "a reasonable and credible belief of nonliability." (Pl.'s Obj. at 2 (citing *Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d Cir.1995))).

Plaintiffs' bare assertion is unsupported by the record. The cease-and-desist letter, written under the letterhead of Baker & McKenzie LLP, clearly specified the basis of the Kuklachevs's trademark claims and indicated that they were "prepared to take legal action." (Poe Decl., Ex. 13, Doc. Entry No. 81.) This letter would have suggested to a reasonable person the possibility of a claim. Although Plaintiffs contend that they genuinely believed that the cease-and-desist letter was merely "an attempt to blackmail" them, they have not presented any evidence showing that such a belief was objectively reasonable. *See United Nat. Ins. Co. v. 515 Ocean Ave., LLC,* 477 Fed.Appx. 840, 844 (2d Cir.2012) (summary order) ("At issue is not whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him."); *see also Sparacino,* 50 F.3d at 143–44 (finding that a union had a reasonable belief of nonliability where its insurance broker had unequivocally stated that the union's insurance policy did not cover the claim at issue). Moreover, Plaintiffs have not offered a valid excuse as to why they failed to notify Capitol of the Kuklachevs's claim even after the *Kuklachev* action was filed. Accordingly, the Court finds that no genuine issue of material fact exists as to whether Plaintiffs failed to provide Capitol with timely notice of a potential claim.

Plaintiffs' objections to the R & R's finding that the claims asserted in the *Kuklachev* action were not covered by the Plaintiffs' insurance policies are also without merit. (Pls.' Obj. at 3.) With respect to this objection, Plaintiffs offer only the conclusory assertion that they have met their burden of proof. The Court finds no error, let alone clear error, with respect to this section of the R & R and adopts Magistrate Judge Mann's analysis in its entirety.

Finally, Plaintiffs object to the magistrate judge's finding that Capitol was not estopped from disclaiming its defense of the Gelfmans. (Pl.'s Obj. at 3–4.) The Gelfmans maintain that Capitol unreasonably delayed disclaiming coverage. (*Id.*) However, Plaintiffs still fail to identify any cognizable prejudice caused by Capitol's conduct. *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 95 (2d Cir.2002) (holding that "estoppel requires a showing of prejudice to the in-

sured"). Accordingly, Plaintiffs have failed to establish a genuine issue of material fact with respect to their estoppel argument.

In sum, having undertaken a *de novo* review of those sections of the R & R to which Plaintiffs provide specific objections, the Court hereby adopts Magistrate Judge Mann's characteristically thorough and well-reasoned R & R in its entirety. Accordingly, summary judgment is granted in favor of the Defendants, and the complaint is dismissed.

## CONCLUSION

Upon due consideration, the R & R is adopted in its entirety. The complaint is dismissed as to all Defendants.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

ROANNE L. MANN, United States Magistrate Judge.

Currently pending before this Court, on a referral from the Honorable Dora L. Irizarry, are cross-motions for summary judgment brought by *pro se* plaintiffs Mark Gelfman and Yanis Gelfman (collectively, the "Gelfmans") and by defendants Capitol Indemnity Corporation, Capitol Specialty Insurance Corporation, and Capitol Transamerica Corporation (collectively, "Capitol"). *See* Plaintiffs' Motion for Summary Judgment (docketed June 4, 2013) ("Pl. Motion"), Electronic Case Filing ("ECF") Document Entry ("DE") # 74; Defendants' Motion for Summary Judgment (docketed June 4, 2013) ("Def.

Motion"), DE # 78. The Gelfmans commenced this action on January 14, 2011, alleging that Capitol had breached its contractual obligations under two consecutive insurance policies when it disclaimed coverage and further representation of them after having initially defended the Gelfmans in a lawsuit arising out of their alleged acts of trademark infringement. *See* Complaint (Jan. 14, 2011) ("Compl."), DE # 1.

For the reasons given below, this Court respectfully recommends that the District Court deny the Gelfmans' motion for summary judgment and grant Capitol's motion for summary judgment.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Unless otherwise indicated, the facts contained herein are drawn from Capitol's uncontested Rule 56.1 Statement of Material Facts ("Rule 56.1 Statement"), DE # 79, # 90.[1]

From 2006 to 2008, Capitol issued the Gelfmans and Gelfman International Enterprises, Inc. ("GIE") two general liability insurance policies,[2] one numbered CS00218055 and the other numbered CS00217969. *See* Rule 56.1 Statement ¶ 1. Policy CS00218055 was in effect between October 1, 2006 and October 1, 2007, while policy CS 00217969 was in effect from October 1, 2007 through October 1, 2008. *See id.* Both policies required Capitol, subject to a series of exclusions, to defend the Gelfmans against lawsuits seeking damages for, *inter alia,* "personal and ad-

---

1. As discussed in greater detail below, the Gelfmans, despite being properly notified by Capitol of their obligations under Local Civil Rule 56.1 of the Southern and Eastern Districts of New York, *see* Notice (docketed Jun. 4, 2013), DE # 96, failed either to file a Rule 56.1 Statement in support of their motion or to properly contest Capitol's Rule 56.1 State-

ment. This Court nonetheless will consider the Gelfmans' factual arguments to the extent that they have submitted supporting evidence.

2. As GIE is not a party to the Gelfmans' action against Capitol, the facts recounted in this opinion often omit reference to GIE.

vertising injury," and to pay any liability incurred by the Gelfmans as a result of any such lawsuit up to $1,000,000.00. *See id.* ¶¶ 2–9; Capitol Specialty Insurance Corp. Policy Number CS 00218055, DE # 82–1 at 21 [3]; Capitol Specialty Insurance Corp. Policy Number CS00217969, DE # 82–2 at 21.

On June 2, 2008, Yuri and Dmitri Kuklachev (collectively, the "Kuklachevs") commenced a lawsuit here in the United States District Court for the Eastern District of New York, under docket number 08–CV–2214, against the Gelfmans, GIE and various other defendants (the "Kuklachev Suit"). *See* Rule 56.1 Statement ¶ 15. According to the allegations in that action, when the Kuklachevs toured the United States in 2005 and 2006 with their Russian circus show featuring trained cats, the Gelfmans served as their American promoters; but in 2007, the Gelfmans allegedly created an imitation show that infringed upon the Kuklachevs' trademarks by copying their acts, cat tricks, and costumes, and by stealing the original production's name, "Moscow Cats Theatre." *See id.; Kuklachev v. Gelfman*, 629 F.Supp.2d 236 (E.D.N.Y.2008), *aff'd*, 361 Fed.Appx. 161 (2d Cir.2009).

It is undisputed that the Gelfmans first learned that the Kuklachevs might sue them when the Kuklachevs' attorney sent the Gelfmans, through their then counsel,[4] a cease-and-desist letter dated May 31, 2007, demanding that they stop their infringing activities and threatening to take legal action. *See* Rule 56.1 Statement

¶¶ 10–13. Contrary to the terms of their insurance policies, the Gelfmans never notified Capitol about the contents of that letter. *See id.* ¶ 14. Instead, Capitol first became aware of the dispute more than thirteen months later, on or about July 17, 2008, when, after the Kuklachev Suit commenced, Capitol was contacted by the Tribeca Arts Center ("Tribeca"), a co-defendant in that action. *See id.* ¶¶ 15–17. Meanwhile, the Gelfmans retained their own counsel, James Woods of the Woods firm, who moved to dismiss the Kuklachevs' complaint in its entirety in early August 2008. *See* Motion to Dismiss (Aug. 4, 2008), in *Kuklachev v. Gelfman*, 08–CV–2214, DE # 12, 2008 WL 5353998.[5]

On or about September 2, 2008, Capitol notified the Gelfmans that it had retained George R. McGuire, an intellectual property attorney with the firm of Bond Schoeneck & King PLLC (the "Bond firm"), to defend the Gelfmans (as well as GIE) in connection with the Kuklachev Suit. *See* Rule 56.1 Statement ¶¶ 19–21. Michael Wedwick, a claims adjuster for Capitol, spoke to the Gelfmans via phone on September 19, 2008, and later confirmed by email that Capitol had retained counsel to defend them. *See id.* ¶ 22. In a letter dated October 2, 2008, Capitol expressly stated that counsel's retention was subject to a reservation of rights while Capitol continued its investigation of the claims in the Kuklachev Suit. *See id.* James Woods and the Woods firm remained co-counsel of record for the Gelfmans.

---

3. Where, as in this citation, the cited page numbers follow the ECF docket entry number, they refer to the ECF system's pagination for that entry as a whole, rather than to pages of the document itself.

4. The Gelfmans and GIE were plaintiffs in an unrelated action filed in this district, *Gelfman International Enterprises, Inc., et al. v. Klioner, et al.*, 05–CV–3826 (RJD), and were repre-

sented by the law firm Woods & Associates, P.C. (the "Woods firm").

5. Documents in the court file in *Kuklachev v. Gelfman*, 08–CV–2214, are cited herein by the name of the document, the date of docketing, followed by the docket entry number (if applicable) and the notation "in *Kuklachev*."

On December 22, 2008, the Honorable Charles P. Sifton (the district court judge assigned to the Kuklachev Suit) granted the Kuklachevs' motion for a preliminary injunction against the Gelfmans. *See Kuklachev v. Gelfman*, 629 F.Supp.2d at 236. In response, Capitol issued a further reservation-of-rights letter to the Gelfmans on December 30, 2008, in which it again expressly reserved "all of its rights to deny or limit coverage." Letter of Janice Allende to the Gelfmans (Dec. 30, 2008) ("12/30/08 Reservation–of–Rights Letter"), DE # 82–4 at 68–89. Notwithstanding its reservation of rights, Capitol authorized the Bond firm both to pursue an appeal of the preliminary injunction on behalf of the Gelfmans [6] and to continue motion practice in the Kuklachev Suit. *See* Rule 56.1 Statement ¶¶ 36–38. Meanwhile, the Gelfmans answered the complaint and interposed a series of counterclaims against the Kuklachevs. *See* Answer (Mar. 12, 2009), DE # 266 in *Kuklachev*. Following rulings on defense motions that failed to dispose of the entire complaint, the Kuklachevs filed an Amended Complaint against the Gelfmans and others on April 8, 2009. Rule 56.1 Statement ¶ 39.

Soon thereafter, the parties scheduled mediation for June 11, 2009. See *id.* ¶ 41. One week prior to that date, on June 4, 2009, Capitol issued a letter to the Gelfmans disclaiming all defense and indemnity obligations, *see id.* ¶ 42, but agreeing to reimburse the Gelfmans for their legal fees for an additional 60 days in order to afford them an opportunity to retain new counsel, *see id.* ¶ 43.

No settlement was reached at the June 11, 2009 mediation, which was attended by Capitol's coverage counsel, Anthony R. Gambardella. *See id.* ¶¶ 44–46. While the parties to the instant lawsuit do not dispute that Capitol offered to contribute $50,000 towards a resolution of the Kuklachev Suit, they do draw starkly different inferences from what transpired. Capitol claims that, though disclaiming coverage, its counsel nevertheless offered to have Capitol pay $50,000 toward a global settlement, but the Gelfmans rejected that offer. *See id.* ¶ 46. The Gelfmans maintain that they could have settled the Kuklachev Suit at the mediation if Capitol had offered to pay $215,000, *see* Pl. Motion ¶ 21, DE # 74, and they characterize Capitol's offer as one made in bad faith, *see id.*; April 29, 2013 Opposition to Defendants' Motion for Summary Judgment (docketed June 4, 2013) ("Pl. Opposition I") ¶ 10, DE # 83.

Several months later, on August 11, 2009, the Bond firm withdrew as counsel of record for the Gelfmans, *see* Rule 56.1 Statement ¶ 47, while the attorney previously retained by the Gelfmans, co-counsel James Woods, continued to defend them until November 11, 2009, *see id.* ¶ 48. Thereafter, the Gelfmans represented themselves in the Kuklachev Suit, which they eventually settled in 2010 by agreeing to adhere to the terms of Judge Sifton's preliminary injunction and by relinquishing any claim to the Moscow Cats Theatre trademark. *See id.* ¶¶ 49, 50; Pl. Motion ¶ 10, DE # 85 (sealed copy of DE # 74). The settlement agreement that the Gelfmans entered into with the Kuklachevs did not require them to make any payments. See Rule 56.1 Statement ¶ 50. Capitol had continued to pay the Gelfmans' attorneys' fees and costs until August 2009, *see id.* ¶ 53, and they incurred no attorneys' fees as a result of Capital's disclaimer of coverage, *see id.* ¶ 55.

---

**6.** The Second Circuit denied that appeal on October 16, 2009. *See* Rule 56.1 Statement ¶ 38.

Following their settlement with the Kuklachevs, the Gelfmans filed the instant suit against Capitol on January 14, 2011. *See* Compl. On March 31, 2013, the Gelfmans moved for summary judgment, *see* Pl. Motion, DE # 74, and Capitol cross-moved for summary judgment the following day, *see* Def. Motion, DE # 78.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment may be granted only where the pleadings and evidence in the record "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed.R.Civ.P. 56(a). Where, as in the case of Capitol's motion, summary judgment is sought against the party that will bear the ultimate burden at trial, the movant's burden on the motion "will be satisfied if [it] can point to an absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *see Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."); *Nora Beverages, Inc. v. Perrier Grp. of Am. Inc.*, 164 F.3d 736, 742 (2d Cir.1998).

Once the moving party has made the requisite showing, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting former Fed.R.Civ.P. 56(e)); *see* Fed.R.Civ.P. 56(e)(3) ("If a party fails to ... properly address another party's assertion of fact,

the court may grant summary judgment if the motion and supporting materials ... show that the movant is entitled to it."). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). Nevertheless, in ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See id.* at 255, 106 S.Ct. 2505. Thus, summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 134 (2d Cir.2000). Where, as here, parties to an action cross-move for summary judgment, the Court must consider each motion independently, and must apply the same standards, drawing all reasonable inferences "against the party whose motion is under consideration." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 46 (2d Cir.2007) (citation omitted). Each cross-movant is required to present sufficient evidence to allow the court to enter judgment in its favor. *See Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988).

### II. The Impact of Plaintiffs' Failure to Follow Local Civil Rule 56.1

This district's Local Civil Rule 56.1(a) requires a party seeking summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(a). The nonmoving party must then provide a counterstatement with "correspondingly numbered paragraph[s]" responding to each of the paragraphs in the moving party's

statement. S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(b). "Ordinarily, a failure to respond to facts set forth in the movant's Rule 56.1 statement results in those facts being deemed admitted." *Chinnery v. N.Y.S. Office of Children & Family Servs.*, No. 10–CV–882 (DAB), 2014 WL 1651950, at *1 (S.D.N.Y. Apr. 25, 2014) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003)). Notwithstanding that general rule, the Second Circuit has emphasized that *pro se* litigants are entitled to "special solicitude ... when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988)). Thus, when a *pro se* plaintiff fails to strictly comply with the Local Rules (including Civil Rule 56.1), the Court nonetheless "retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions ...." *Wali v. One Source Co.*, 678 F.Supp.2d 170, 178 (S.D.N.Y.2009); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Despite having been properly served with notice of the requirements of Local Civil Rule 56.1, *see* Notice (June 4, 2013), DE # 96, the Gelfmans filed neither a Rule 56.1 statement in support of their motion for summary judgment nor a formal counterstatement of facts responding to the defense Rule 56.1 statement in support of Capitol's motion for summary judgment. Nevertheless, the Gelfmans have not simply rested on the assertions in their complaint or their arguments in their summary judgment papers. Their brief in support of summary judgment includes as exhibits a series of emails between the Gelfmans and Capitol's representatives, internal emails from Capitol discussing the June 2009 mediation, and a page of handwritten notes by an unidentified author that appear to have been made at the mediation. *See* Pl. Motion, DE # 74 at 12–33. Similarly, their submission entitled Opposition to Defendants ' Motion for Summary Judgment attaches three exhibits in support of their contentions. *See* Pl. Opposition I, DE # 83 at 5–32. These include a series of interrogatory answers from the plaintiffs in the Kuklachev Suit, internal claims notes from Capitol, and an unlabeled, undated spreadsheet that purports to show $351,000 in lost bookings for the Gelfmans' version of the Moscow Cats Theatre. *See id.* Notwithstanding the Gelfmans' violation of Local Civil Rule 56.1, this Court is prepared to exercise its discretion to consider those exhibits in connection with the arguments advanced by the Gelfmans.

## III. Capitol's Motion for Summary Judgment

The Court will first address Capitol's motion for summary judgment, which is properly supported by a Rule 56.1 Statement that the Gelfmans have not responded to or otherwise controverted.

### A. Whether Capitol Was Obligated to Defend the Gelfmans in the Kuklachev Suit

Capitol contends that, as an initial matter, it was not obligated to indemnify or defend the Gelfmans in connection with the Kuklachev Suit, because the Gelfmans failed to provide timely notice of the Kuklachevs' potential claims. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (docketed June 4, 2013) ("Def. Mem.") at 4–7, DE # 80. In addition, Capitol argues that the Amended Complaint in the Kuklachev Suit

did not allege injuries covered by the Gelfmans' policies. *See id.* at 7–19.

■ Under New York law,[7] an insurer's duty to defend the insured "is broader than the duty to indemnify," and arises "whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443, 749 N.Y.S.2d 456, 779 N.E.2d 167 (2002) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991)). Thus, "[i]f the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *Id.* Under those circumstances, the insurer must defend the insured "until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 620 (2d Cir.2001) (emphasis in original). On the other hand, if the allegations against the insured clearly do not fall within the coverage provisions of the insurance policy or fall within one or more coverage exclusions, then the insurer owes no duty to defend the insured. *Id.* at 620–622; *see, e.g., George Muhlstock & Co. v. American Home Assurance Co.*, 117 A.D.2d 117, 502 N.Y.S.2d 174, 179 (1st Dep't 1986) ("[W]here the facts alleged plainly do not bring the case within the coverage of the policy, there is no obligation to defend.") (citation omitted).

### 1. *Whether the Gelfmans Gave Timely Notice of the Kuklachevs' Potential Claim*

The insurance policies issued by Capitol to the Gelfmans require that, in order to obtain coverage, the policy holder must notify Capitol "as soon as practicable" of any " 'occurrence' or ... offense which may result in a claim," and must "immediately send [Capitol] copies of any demand, notices, summonses, or legal papers received in connection with the claim or 'suit.' " Rule 56.1 Statement ¶ 9. On or about May 31, 2007, the Gelfmans (through counsel) received a cease-and-desist letter from the Kuklachevs' attorney that threatened legal action unless they ceased their alleged trademark infringement; nevertheless, the Gelfmans never provided Capitol with either a copy or notice of that letter. *See id.* ¶¶ 10–14. Consequently, Capitol first learned of the claim thirteen months later, after the Kuklachevs had initiated their lawsuit, when Tribeca, another defendant named in that action, apprised Capitol of the litigation. *See id.* ¶ 17.

■ New York law defines "as soon as practicable" to mean "within a reasonable time under all the circumstances." *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). The "obligation to provide notice of an occurrence or offense is triggered by the insured's knowledge of events and circumstances which would *suggest* the *possibility* of a claim, not the actuality of a claim." *Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, 623 F.Supp.2d 438, 444–45 (S.D.N.Y.2008) (emphasis in original). In other words, "the insured is required to notify its carrier of a potential claim," *id.* at 444 (internal quotation marks omitted), and "[o]nce knowledge suggests the possibility of a covered claim, New York law provides that notice

---

**7.** By relying on New York law in their papers, the parties have implicitly agreed that New York law governs, and therefore the Court need not undertake a choice-of-law analysis.

*See Phila. Indem. Ins. Co. v. City of New York*, No. 09 Civ. 10432(PGG), 2011 WL 1237586, at *3 n. 3 (S.D.N.Y. Mar. 24, 2011).

be given promptly; even periods of delay as short as two months have been found to be unreasonable as a matter of law." *Id.* at 445 (collecting cases); *see, e.g., Serravillo v. Sterling Ins. Co.,* 261 A.D.2d 384, 689 N.Y.S.2d 521, 522 (2d Dep't 1999), appeal denied, 95 N.Y.2d 758, 713 N.Y.S.2d 2, 734 N.E.2d 1213 (2000) (affirming grant of summary judgment in favor of insurer and holding that nine-month delay was unreasonable as a matter of law); *Goodwin Bowler Assocs., Ltd. v. Eastern Mut. Ins. Co.,* 259 A.D.2d 381, 687 N.Y.S.2d 126, 127 (1st Dep't 1999) (affirming grant of summary judgment in insurer's favor, and holding that two-month delay was unreasonable as a matter of law). Moreover, under New York law, compliance with the notice provisions of an insurance contract is a condition precedent to all of the insurer's duties and liability under the policy, "including the duty to defend." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,* 822 F.2d 267, 273 (2d Cir.1987) (hereinafter, *"Int'l Flavors"*); *accord American Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 438 (2d Cir.1995); *see Great Canal Realty Corp. v. Seneca Ins. Co.,* 5 N.Y.3d 742, 743, 800 N.Y.S.2d 521, 833 N.E.2d 1196 (2005) ("The insured's failure to satisfy the notice requirement constitutes 'a failure to comply with a condition precedent which, as a matter of law, vitiates the contract.'") (quoting *Argo Corp. v. Greater N.Y. Mut. Ins. Co.,* 4 N.Y.3d 332, 339, 794 N.Y.S.2d 704, 827 N.E.2d 762 (2005)).

▪ The delay here—for which the Gelfmans proffer no excuse—exceeds thirteen months.[8] "Under New York law, the question whether notice was given within a reasonable time may be determined as a matter of law when (1) the facts bearing on the delay in providing notice are not in dispute, and (2) the insured has not offered a legally valid excuse for the delay." *Prof'l Prod. Research,* 623 F.Supp.2d at 445 (citing *State of New York v. Blank,* 27 F.3d 783, 795 (2d Cir.1994)); *see also Gresham v. American Gen. Life Ins. Co.,* 135 A.D.2d 1121, 523 N.Y.S.2d 282 (4th Dep't 1987) ("While ordinarily it is a question of fact whether an insured gave timely notice of loss, summary judgment is warranted where the insured has not offered a credible excuse for the delay in notification and where the underlying facts are not in dispute...."). The Gelfmans do not dispute their receipt of the Kuklachevs' May 31, 2007 cease-and-desist letter, nor do they deny that that letter—which expressly referenced the Kuklachevs' willingness to take legal action to secure relief—triggered their obligation to notify Capitol of the Kuklachevs' potential claim within a reasonable amount of time; yet the Gelfmans never did so. *See generally* Pl. Motion, DE # 74; Pl. Opposition I, DE # 83; Rule 56.1 Statement ¶ 14. Because Capitol was not obligated to provide coverage absent proper notice, this dereliction alone constitutes a sufficient basis for Capitol's refusal to defend and indemnify the Gelfmans in the Kuklachev Suit.

▪ While not disputing that they failed to satisfy their contractual obligation of timely notice, the Gelfmans argue that Capitol's disclaimer of coverage "on the basis of late notice has been waived by the fact that Capitol had voluntarily undertaken" their defense. Pl. Opposition I ¶ 5, DE # 83. Waiver of a defense requires "a voluntary and intentional relinquishment of a known right ... where there is direct or circumstantial proof that the insurer

---

8. Indeed, but for the notice provided by Tribeca, it appears that the delay might have continued indefinitely.

intended to abandon the defense." *Albert J. Schiff Assocs., Inc. v. Flack,* 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980); *accord State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1431 (2d Cir.1991); *see Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 94 (2d Cir.2002). In accordance with New York law, waiver of rights under an insurance contract "should not be lightly presumed." *Globecon Grp., LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 176 (2d Cir. 2006) (quoting *Gilbert Frank Corp. v. Federal Ins. Co.,* 70 N.Y.2d 966, 968, 525 N.Y.S.2d 793, 520 N.E.2d 512 (1988)).

■ The Gelfmans offer argument—but no evidence—that Capitol intended to abandon its late-notice defense. Nor does the record otherwise support an inference of such a waiver. Contrary to the Gelfmans' contention, the fact that Capitol initially elected to undertake the Gelfmans' defense in the Kuklachev Suit did not, without more, preclude the insurer from thereafter withdrawing from the case. *See Int'l Flavors,* 822 F.2d at 273 (collecting New York cases). Furthermore, where the insurer has repeatedly reserved its rights, "such reservations preclude arguments both as to waiver and to equitable estoppel." *Globecon,* 434 F.3d at 176 (collecting cases).

It is undisputed that Capitol repeatedly reserved its rights. On October 2, 2008, within a month of having retained counsel to defend the Gelfmans in the Kuklachev Suit, and before the Bond firm had even entered an appearance in that case, *see* Notices of Appearance (Nov. 3, 2008), DE # 91, # 92 in *Kuklachev,* Capitol sent the Gelfmans a reservation-of-rights letter advising that "[n]o action taken by us acknowledging receipt of this tender of defense and investigating this matter shall constitute a waiver of any of our rights under the policy." Reservation–of–Rights Letter (Oct. 2, 2008) ("10/2/08 Reserva-tion–of–Rights–Letter"), DE # 82–4 at 7, 17–18. Two months later, Capitol learned of the Kuklachevs' May 31, 2007 cease-and-desist letter, which was attached to reply papers filed by the Kuklachevs on December 2, 2008, in connection with their motion for a preliminary injunction. *See* Declaration of Joseph K. Poe in Support of Defendants' Motion for Summary Judgment (docketed June 4, 2013) ¶ 3, DE # 81; May 31, 2007 Cease–and–Desist Letter, DE # 81 at 4–5; Exh. F to Reply in Support of Amended Motion (Dec. 2, 2008), DE # 145–6 in *Kuklachev.* Based on that new revelation, Capitol issued its December 30, 2008 reservation-of-rights letter, which expressly reserved Capitol's "rights to deny coverage to the extent that the Insured provided late notice...." 12/30/08 Reservation–of–Rights Letter, DE # 82–4 at 87.

■ A waiver of an insurer's right to disclaim will not be implied under New York law unless "the insurer possesse[d] sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *AMRO Realty,* 936 F.2d at 1431. In other words, "[t]he reasonableness of any delay in disclaiming must be judged from the time that the insurer is aware of sufficient facts to issue a disclaimer." *Mount Vernon Fire Ins. Co. v. Unjar,* 177 A.D.2d 480, 575 N.Y.S.2d 694, 696 (2d Dep't 1991); *see In re Prudential Prop. & Cas. Ins. Co.,* 213 A.D.2d 408, 623 N.Y.S.2d 336, 336 (2d Dep't 1995). Accordingly, "[a] delay in giving notice of reservation of rights will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense...." *Couch on Insurance* § 202:60 (3d ed.2005) (quoted in *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.,* 28 A.D.3d 32, 807 N.Y.S.2d 62, 66 (1st Dep't 2006)).

As detailed above, here the unrefuted facts in the record reflect the following:

Capitol promptly reserved its rights on the coverage issue, and, once Capitol received notice that, more than one year prior to initiating litigation, the Kuklachevs had threatened the Gelfmans with legal action, Capitol expressly reserved its right to deny coverage based on late notice. Even then, Capitol did not precipitously withdraw from the action, but instead, while reserving its rights, authorized the Bond firm to appeal Judge Sifton's grant of a preliminary injunction on December 22, 2008 and to pursue dispositive motions with the hope of securing dismissal of the Kuklachev Suit. *See* Rule 56.1 Statement ¶ 36. Under these circumstances, Capitol's "tentative defense" of the Gelfmans did not constitute a waiver of its late-notice argument. *AMRO Realty*, 936 F.2d at 1432; *see Int'l Flavors*, 822 F.2d at 274 (no waiver of late-notice defense where, several weeks after undertaking insured's defense, the insurer "expressly informed [the insured] that it had not yet confirmed coverage").

Accordingly, the Gelfmans' waiver argument is unavailing. Having failed to receive timely notice, Capitol was not contractually obligated to defend or indemnify the Gelfmans.

2. *Whether the Claims in the Kuklachev Suit Were Covered by the Gelfmans' Policies*

 Capitol also argues that it had no duty to defend the Gelfmans, on the

ground that the amended complaint in the Kuklachev Suit does not allege "personal and advertising injury" as defined by the Gelfmans' insurance policies, and, moreover, that the Kuklachevs' specific claims all fall within various policy exclusions. *See* Def. Mem. at 7–18, DE # 80. Although the burden of establishing that coverage exists lies with the insured, *see, e.g., Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir.2000) ("It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers his loss."), the insurer must prove the applicability of a policy exclusion, *see Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to provide that an exclusion in the policy applies to defeat coverage."). The Gelfmans have offered no evidence either to establish that the Kuklachevs' claims were covered by the insurance policies or to refute Capitol's arguments regarding policy exclusions.[9] This omission thus provides yet another basis for concluding that Capitol had no duty to defend or indemnify the Gelfmans.

**B. Whether Capitol Was Estopped From Disclaiming Its Defense of the Gelfmans**

 Effectively conceding that Capitol was not contractually obligated to

---

9. In response to Capitol's showing on this issue, the Gelfmans simply rely on what they describe as "[a] strong presumption in favor of coverage" and the principle that "ambiguities in insurance contracts are construed in favor of the insured." May 31, 2013 Opposition to Defendants['] Motion for Summary Judgment (docketed June 4, 2013) ("Pl. Opposition II") at 2, DE # 77.

Because the Gelfmans have the burden of establishing that coverage exists but have offered no evidence, it is not necessary to analyze each of Capitol's coverage-related arguments in detail. As an illustrative example, however, Capitol argues that Counts 1, 2, 3, 4, and 7 of the Kuklachevs' amended complaint, which assert claims related to and arising out of the Gelfmans' alleged trademark infringement, are not covered because the Gelfmans' policies define "advertising injury" to apply only to alleged copyright, trade dress, or slogan infringement and each policy contains an express exclusion for trademark infringement. *See* Def. Mem. at 7–9, DE # 80.

defend or indemnify them, the Gelfmans argue instead that Capitol was estopped from disclaiming coverage.[10] *See generally* Pl. Motion, DE # 74; Pl. Opposition I, DE # 83. Under New York insurance law, estoppel

> arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment. Thus, estoppel requires a showing of prejudice to the insured.

*Burt Rigid Box,* 302 F.3d at 95 (citing *Albert J. Schiff Assocs.,* 51 N.Y.2d at 698, 435 N.Y.S.2d 972, 417 N.E.2d 84); *accord Rapid Park Indus. v. Great Northern Ins. Co.,* 502 Fed.Appx. 40, 42 (2d Cir.2012). Furthermore, "[e]stoppel arguments are precluded where an insurer 'repeatedly and expressly reserved its rights in its communications' with the insured." *Rapid Park Indus.,* 502 Fed.Appx. at 42 (quoting *Globecon,* 434 F.3d at 176); *see Hutton Constr. Co. v. County of Rockland,* 52 F.3d 1191, 1193 (2d Cir.1995); *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP,* 277 F.Supp.2d 245, 254 (S.D.N.Y.2003) ("When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred."); *cf. Burt Rigid Box,* 302 F.3d at 95 (insurer may be estopped from asserting lack of coverage where it "defends the case without asserting any policy defenses" and the insured is thereby prejudiced).

The Gelfmans' estoppel argument fails as a matter of law, as they cannot establish either of the two elements of estoppel: i.e., that they reasonably relied on any actions by Capitol that were inconsistent with a lack of coverage, or that such actions caused them prejudice.

### 1. *Capitol's Conduct*

The Gelfmans' estoppel theory is predicated on their unsupported assumption that "Capitol represented to [the] Gelfmans that there was coverage in accordance [with] the policy. . . ." Pl. Opposition I ¶ 6, DE # 83. The Gelfmans point to two pieces of documentary evidence to support their characterization of Capitol's conduct: (1) an email dated September 19, 2008, from one of Capitol's senior claims adjusters, Michael Wedwick, to Yanis Gelfman, *see* Email of Michael Wedwick to Yanis Gelfman (Sept. 19, 2008) (the "9/18/08 Email"), DE # 82–4 at 4; and (2) the internal notes of another of Capitol's senior claims adjusters, Curt Hellmer, *see* Pl. Opposition I ¶ 6, DE # 83; Claim Notes attached to Pl. Opposition I, DE # 83 at 25–31.

Even viewed in the light most favorable to the Gelfmans, Mr. Hellmer's notes do not support their theory. First, they are Capitol's internal notes, not evidence of any communication to the Gelfmans on which they could purport to have relied. Moreover, the notes nowhere state that Capitol had agreed to provide coverage or represented to the Gelfmans that it would provide coverage. To the contrary, in an entry from July 29, 2008, the notes expressly state that "coverage issues exist" and then outline Capitol's concerns that the Kuklachevs' claims may fall within one or more of the policies' exclusions. Claim Notes attached to Pl. Opposition I, DE # 83 at 30.

Mr. Wedwick's email similarly contains no affirmative representation that Capitol had determined that the Kuklachevs' claims were covered by the Gelfmans' policies. *See* 9/19/08 Email, DE # 82–4 at 4. In an apparent reference to a phone

---

**10.** "Waiver and estoppel are distinct in New York insurance law." *Burt Rigid Box,* 302 F.3d at 95.

conversation earlier that day between Mr. Wedwick and the Gelfmans, the relevant portion of the email reads: "This will confirm our conversation of today wherein we advised you that George McGuire had been retained by our company to defend [the Gelfmans] in the suit filed against you by the Kuklachevs." *Id.* Even assuming *arguendo* that the Gelfmans may have inferred from Mr. Wedwick's email that Capitol had agreed not only to provide for their defense but also to indemnify them for any eventual liability, the record reflects that less than two weeks later, in a letter to the Gelfmans dated October 2, 2008, Capitol expressly reserved its rights to disclaim coverage, as well as future representation, based on concerns that the Kuklachevs' claims were not covered. *See* 10/2/08 Reservation–of–Rights Letter, DE # 82–4 at 6. And then in December 2008, following the disclosure of the Kuklachevs' cease-and-desist letter, Capitol again expressly reserved its rights to disclaim coverage and any further defense of the Gelfmans, pending the outcome of their coverage determination. *See* 12/30/08 Reservation–of–Rights Letter, DE # 82–4 at 68. In the absence of any documented representation by Capitol that it would unconditionally provide coverage, and in light of the two express reservation-of-rights letters provided to the Gelfmans by Capitol, the Gelfmans have failed to raise a triable issue of fact on an essential element of estoppel.

### 2. *Prejudice to the Gelfmans from Capitol's Actions*

Even if Capitol had represented to the Gelfmans that it would provide coverage for the Kuklachevs' claims, the Gelfmans have not shown that they thereby suffered any prejudice. As an initial matter, where, as here, the insurer defends the insured subject to a reservation of rights, the insured will not be heard to complain that he detrimentally relied on the insurer's representation of him: "The purpose of a reservation of rights is to prevent an insured's detrimental reliance on the defense provided by the insurer." *Federated Dep't Stores*, 807 N.Y.S.2d at 67. Consequently, the relevant inquiry is whether the Gelfmans suffered any prejudice as a result of any conduct by Capitol up until the issuance of its reservation-of-rights letters. *See id.* ("The reservation is a sufficient preventative to reliance . . . .").

The Gelfmans identify no such prejudice, *see generally* Pl. Motion, DE # 74; Pl. Opposition I, DE # 83; Pl. Opposition II, DE # 77, nor can any be discerned by the Court. In early August 2008, before Capitol had retained the Bond firm or communicated with the Gelfmans about that retention, the firm that the Gelfmans had hired to defend them in the Kuklachev Suit filed a motion to dismiss. *See* Motion to Dismiss (Aug. 4, 2008), DE # 12 in *Kuklachev.* That motion was not ruled upon until February 26, 2009, *see* Memorandum and Opinion (Feb. 26, 2009), DE # 252 in *Kuklachev*, 600 F.Supp.2d 437 (E.D.N.Y.2009) and the Bond firm did not appear in the Kuklachev Suit until November 3, 2008, *see supra* p. 268, after the issuance of the 10/2/08 Reservation–of–Rights Letter. Therefore, there can be no plausible claim of detrimental reliance during the period predating Capitol's issuance of its reservation-of-rights letters.

Even if the Gelfmans were entitled to look to events postdating those letters in order to support their claim of prejudice, their estoppel argument nevertheless fails. The Gelfmans incurred no legal fees as a result of the Kuklachev Suit. *See* Rule 56.1 Statement ¶ 53. Furthermore, the settlement agreement ultimately reached between the Gelfmans and the Kuklachevs

involved no payment of monetary damages by the Gelfmans; it merely codified the preliminary injunction against the Gelfmans and required that they relinquish any claim to the Moscow Cats Theatre trademark. *Id.* ¶ 50.[11]

Faced with this undisputed evidence, the Gelfmans nevertheless claim to have suffered several forms of prejudice. First, citing unlabeled, undated spreadsheets purporting to show $351,000 in lost bookings, *see* Spreadsheet attached to Pl. Opposition I, DE # 83 at 32, they contend that they "lost close to $400,000 in confirmed bookings directly due to the Kuklachev lawsuit," Pl. Opposition I ¶ 12, DE # 83. Even assuming *arguendo* that these spreadsheets are sufficient to prove the existence and amount of the Gelfmans' lost bookings, the Gelfmans concede that those losses occurred shortly after the filing of the Kuklachev Suit as a result of the negative publicity generated by that case and not because of the settlement they eventually reached. *See* Deposition Testimony of Yanis Gelfman, DE # 92–1 at 45 (sealed). Thus, any such losses occurred before Capitol undertook the Gelfmans' defense and would have occurred regardless of Capitol's conduct in providing for that defense.[12]

The Gelfmans additionally argue that they

> were clearly prejudiced by Capitol[']s disclaimer of coverage[,] by Capitol's own undertaking of the Gelfman[s'] defense and thereby depriving [the] Gelfmans [of] control of the defense action.

After 9 months, and knowing that [the] Gelfman[s] have become completely reliant on their defense, Capitol pulls the plug 7 days before court[-]ordered mediations were to take place.

Pl. Opposition II at 3, DE # 77.

 As a general rule, the fact that an insurer undertakes the defense of an insured, even for an extended period of time, does not constitute a legally cognizable source of prejudice unless the representation occurred absent a reservation of rights or was such that the character and strategy of the lawsuit could no longer be altered. *See Phila. Indem. Ins. Co. v. City of New York,* No. 09 Civ. 10432(PGG), 2011 WL 1237586, at *8 (S.D.N.Y. Mar. 24, 2011) (prejudice not presumed despite insurer's eight-month control of defense because insureds were "not negatively affected by the representation"); *Federated Dep't Stores,* 807 N.Y.S.2d at 68 ("Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered."); *see also General Accident Ins. Co. of Am. v. Metropolitan Steel Indus., Inc.,* 9 A.D.3d 254, 780 N.Y.S.2d 128, 128–29 (1st Dep't 2004) (estoppel found where insurer controlled defense of insured without reservation of rights); *U.S. Underwriters Ins. Co. v. Landau,* 679 F.Supp.2d 330, 344 (E.D.N.Y. 2010) (prejudice will be presumed based on insurer's assumption of defense only where "an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in

---

11. Although the Kuklachevs did obtain an entry of default against GEI, *see* Clerk's Entry of Default (June 7, 2010) in *Kuklachev,* the Kuklachevs never pursued a default judgment against GEI, and the notation of default was rendered moot when the Kuklachev Suit settled and was closed. *See* Civil Case Terminated (Nov. 4, 2010) in *Kuklachev; see also* Minute Entry (June 11, 2010) ¶ 4, DE # 407 in *Kuklachev.*

12. If the Gelfmans wished to litigate the issue of lost business, they should have pursued their counterclaims in the Kuklachev Suit, rather than claiming that alleged injury as a basis for recovery against Capitol in this case.

reliance on which the insured suffers the detriment of losing the right to control its own defense") (quoting *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir.2002)). Simply put, though the Gelfmans vaguely complain that Capitol deprived them of "control of the defense," Pl. Opposition II at 3, DE # 77,[13] courts have rejected similar arguments that "the mere loss of control over one's defense is sufficient prejudice...." *Phila. Indem.*, 2011 WL 1237586, at *8 (internal quotation marks omitted).

Here, shortly after retaining counsel for the Gelfmans, Capitol expressly reserved its rights on two separate occasions. The Gelfmans have presented no evidence or argument that at the time of Capitol's disclaimer they could not have altered their legal strategy, particularly given the fact that attorney James Woods, their handpicked counsel, served as co-counsel of record along with the Bond firm, and remained in the case for several months after the Bond firm withdrew. Furthermore, at deposition, Mark Gelfman testified that there was nothing he would have done differently to defend against the Kuklachev Suit had Capitol not provided for the defense. *See* Rule 56.1 Statement ¶ 57; Deposition Testimony of Mark Gelfman, DE # 92–1 at 80 (sealed). Under these circumstances, no reasonable factfinder could conclude that Capitol should be estopped from disclaiming coverage.

## IV. Capitol's Duty of Good Faith and Fair Dealing

The Gelfmans further allege that Capitol breached its duty of good faith

and fair dealing by (a) withdrawing from their defense one week prior to the June 11, 2009 mediation and (b) failing to settle the Kuklachev Suit at mediation. *See* Pl. Motion ¶¶ 15–21, DE # 74. Under New York law, once an insurer has assumed the defense of a claim asserted against its insured, "it has a duty ... to act in 'good faith' when deciding whether to settle such a claim, and it may be held liable for breach of that duty." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir.2000). At the same time, there is "a strong presumption in New York against a finding of bad faith liability by an insurer," *Hugo Boss Fashions*, 252 F.3d at 624, which can be "rebutted only by evidence establishing that the insurer's refusal to defend was based on 'more than an arguable difference of opinion' and exhibited 'a gross disregard for its policy obligations,'" *id.* at 625 (quoting *Sukup v. New York*, 19 N.Y.2d 519, 521, 281 N.Y.S.2d 28, 227 N.E.2d 842 (1967)); *see also All State Vehicles v. Allstate Ins. Co.*, 620 F.Supp. 444, 447 (S.D.N.Y.1985) (holding that insurer's refusal to settle, and failure to file answer, without "morally culpable or dishonest conduct on the part of [the insurer,] ... are insufficient to establish bad faith").

Neither of the Gelfmans' arguments is sufficient to overcome the presumption against bad-faith liability. Even viewed in the light most favorable to the Gelfmans, the existing record does not support a finding that the timing of Capitol's decision to disclaim coverage evidences bad faith. As an initial matter, Capitol's disclaimer was proper insofar as it had no duty to

13. Seeking to create the impression that the period of time leading up to the issuance of Capitol's two reservation-of-rights was a critical one in terms of devising defense strategy, the Gelfmans allude to "several dozen pleadings, cross[-]claims, responses and motions" that were filed in the Kuklachev Suit in the interim. Pl. Motion ¶ 8, DE # 74. They fail to note, however, that nearly all of those involved other parties, and were docketed while the dispositive motion previously filed by their original counsel, the Woods firm, was still pending.

defend against the Kuklachev Suit. *See supra* pp. 267–71. And notwithstanding that the disclaimer came on the eve of mediation, the record reflects that throughout the course of the Kuklachev Suit, Capitol consistently apprised the Gelfmans of its concerns about coverage, which were heightened by the filing of the Kuklachevs' amended complaint on April 8, 2009, just a few months prior to the mediation date. Rule 56.1 Statement ¶¶ 39, 42. After investigating the Kuklachevs' new allegations, Capitol disclaimed coverage on June 4, 2009. *See id.* ¶ 43.

Under circumstances similar to those in the instant case (though less favorable for the insurer), the Second Circuit held in *Hugo Boss* that since the plaintiff had not overcome the presumption against bad-faith liability, summary judgment should have been entered in the insurer's favor. *See Hugo Boss Fashions,* 252 F.3d at 608. Here, as there, the timing of the insurer's disclaimer of coverage resulted from its having conducted a review of coverage questions prior to disclaiming, *see id.;* in contrast to that case, where the insurer's eventual disclaimer was in fact held to have been improper, it is undisputed that Capitol was not contractually obligated to defend or indemnify the Gelfmans.

Similarly, Capitol did not violate its duty to defend the Gelfmans in good faith when it failed to settle the Kuklachev Suit at mediation. First, although the Gelfmans claim that, "[a]s shown in a handwritten note produced during the mediation process, the Kuklachev case ... would have been settled with \$215,000," Pl. Motion ¶ 21, DE # 74, the note in question does not appear to show that a demand to settle for \$215,000 was made at the mediation, *see* Handwritten Note attached to Pl. Motion, DE # 74 at 33. Instead, the note, whose author is not identified, indicates in one column that \$215,000 represents an

amount for which the case *might* settle. *See id.*

In any event, "the plaintiff in a bad-faith action must show that the insured lost an actual opportunity to settle the claim at a time when all serious doubts about the insured's liability were removed." *Pavia v. State Farm Mut. Auto. Ins. Co.,* 82 N.Y.2d 445, 454, 605 N.Y.S.2d 208, 626 N.E.2d 24 (1993) (citations, internal quotation marks and ellipses omitted). "In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted." *Id.* at 453–54, 605 N.Y.S.2d 208, 626 N.E.2d 24; *accord New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.,* 295 F.3d 232, 241 (2d Cir.2002). It goes without saying that the Gelfmans do not contend that at the time of the mediation, "all serious doubts about [their] liability" had been removed. Furthermore, the failure to settle at the mediation did not cause them to be held "personally accountable for a large judgment." To the contrary, the Kuklachev Suit resulted in no monetary judgment whatsoever against the Gelfmans and instead settled without their incurring *any* financial obligation.

Accordingly, the Gelfmans have failed to create a triable issue of fact in support of their theory that Capitol violated its duty of good faith and fair dealing.

## V. The Gelfmans' Motion for Summary Judgment

Because this Court recommends that summary judgment be granted in favor of Capitol, there is no need to address the Gelfmans' cross-motion for summary judgment in detail. For the same reasons that

Capitol is entitled to summary judgment, the Gelfmans necessarily are not.

## CONCLUSION

For the foregoing reasons, this Court recommends that the Gelfmans' motion for summary judgment be denied and that Capitol's motion for summary judgment be granted.

Any objections to the recommendations contained herein must be filed with Judge Irizarry on or before June 27, 2014. Failure to file objections in a timely manner may waive a right of appeal to the District Court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

The Clerk is requested to enter this Report and Recommendation into the ECF System and to transmit copies by Federal Express to the Gelfmans at their last known address, 2814 East 28th Street, Brooklyn, New York 11235.

**SO ORDERED.**